897 A.2d 1018

GAYNELL GAC, PLAINTIFF–RESPONDENT, v.
PAUL GAC, DEFENDANT–APPELLANT.

Argued January 30, 2006—Decided May 18, 2006.

*William J. Courtney* argued the cause for appellant.

*Gerard C. Fallon* argued the cause for respondent (*Sonageri & Fallon,* attorneys).

*Charles A. Matison,* President, submitted a brief on behalf of amicus curiae New Jersey Chapter of American Academy of Matrimonial Lawyers (*Mr. Matison,* attorney; *Mr. Matison and Dale E. Console,* on the brief).

*Stuart A. Hoberman,* President, submitted a letter brief on behalf of amicus curiae New Jersey State Bar Association.

Justice WALLACE, JR. delivered the opinion of the Court.

This case raises the issue whether a father must pay the college debt owed by his estranged daughter. In *Newburgh v. Arrigo,* 88 *N.J.* 529, 545, 443 *A.*2d 1031 (1982), this Court established a twelve-factor balancing test to aid in determining whether a court should require a parent to contribute to the cost of a child's post-secondary education. In the present case, the trial court balanced those factors and ordered a father to contribute to his estranged daughter's college loans. The Appellate Division concluded that the lateness of the application seeking contribution from the non-custodial parent and the lack of any adjustment in his child support payments while the child was in college required a

downward adjustment in the amount he should pay. We reverse and hold that under the unusual circumstances presented, a fair balancing of the *Newburgh* factors demonstrates that the non-custodial parent should not have to contribute to the child's college loans.

## I.

The facts of the case are detailed in the decision of the Appellate Division in the first appeal. *Gac v. Gac,* 351 *N.J.Super.* 54, 796 *A.*2d 951 (2002). We recite only the procedural history and those facts that are necessary to decide this matter.

Defendant Paul Gac and plaintiff Gaynell Gac were divorced in 1987. During the divorce proceedings, the trial court ordered Dr. Mathias Hagovsky to perform a psychological evaluation of the family. At that time, the two children of the marriage, Justin and Alyssa, were twelve and nine, respectively. Based on Dr. Hagovsky's recommendation, the trial court did not order visitation between defendant and the children.

Thereafter, defendant followed Dr. Hagovsky's recommendation to establish a "one way" relationship with the children via occasional letters, gifts, and telephone calls until the children were ready to initiate a relationship with him. He made numerous attempts to communicate with his children by means of packages, cards, and letters, but the children did not respond. In 1994, defendant received a packet in the mail containing many of the cards, letters, and checks he had sent to his children. Included in the packet was a letter from then sixteen-year-old Alyssa stating, "We don't want to hear from you. We don't want anything to do with you."

That same year, defendant moved for a temporary reduction in child support because he was unemployed. He also sought family mediation and asked the court to compel plaintiff to comply with the divorce decree and send him updates regarding the children's health, schooling, and social developments. The trial court granted defendant's request for bimonthly reports of the children but

denied, without prejudice, his application for family mediation. The court reserved decision on defendant's motion to temporarily reduce child support, and defendant subsequently obtained employment.

In 1989, defendant remarried and became the stepfather of two children, and in 1994 he and his new wife had a child of their own. Afterwards, defendant enrolled in school to train to be a paramedic and accepted a job in Philadelphia. Based on that career move, he purchased a car for his commute from his home in Barnegat to Philadelphia, and also purchased a second home in Philadelphia to establish residency for his work as a paramedic.

Eventually, Alyssa sought to attend college. During the college selection process, she never consulted or otherwise communicated with her father before choosing Quinnipiac College, a relatively expensive private school. Alyssa indicated on the financial aid applications she submitted between 1996 and 1999 that her father was not a part of her life, he was not assisting her in financing her college education, and his whereabouts were unknown. In short, neither plaintiff nor Alyssa asked defendant for help in financing Alyssa's college education.

Throughout that time period, defendant continued to make his child support payments. In 1996, Justin approached his father and the two began to reestablish a relationship. At some point, Justin informed defendant that Alyssa was attending Quinnipiac.

Alyssa graduated from Quinnipiac in May 2000. On July 11, 2000, defendant filed a motion to terminate child support for Justin and Alyssa. Plaintiff opposed the motion and cross-moved for continuation of child support payments for Alyssa and reimbursement of the cost of Alyssa's college tuition. The motion court terminated child support but ordered defendant to pay up to one-half of Alyssa's outstanding obligations for college loans. The order required plaintiff to provide proof of the amount of Alyssa's loans, excluding loans from family members, and was stayed pending discovery. Following discovery and a hearing, the trial

court lifted the stay and ordered defendant to reimburse Alyssa $35,000.

Defendant appealed. The Appellate Division reversed and remanded for the trial court to consider all of the *Newburgh* factors. *Id.* at 65, 796 *A.*2d 951. In its remand, the Appellate Division instructed the trial court to consider that

(1) defendant was excluded from participating in decisions pertaining to Alyssa's college education, (2) plaintiff and Alyssa chose a relatively expensive private college rather than available New Jersey or Vermont institutions, (3) Alyssa apparently did not seek summer employment during several of the years she attended college, (4) there may have been additional grants available that would have defrayed a portion of Alyssa's college expenses, and (5) plaintiff did not seek reimbursement of Alyssa's student loans during the years these obligations were incurred, thus possibly impairing defendant's ability to make sound financial judgments.

[*Id.* at 63–64, 796 *A.*2d 951.]

The panel also noted the relevance of *Moss v. Nedas,* 289 *N.J.Super.* 352, 674 *A.*2d 174 (App.Div.1996), in which the court "found it inappropriate to compel the father to contribute to his daughter's college expenses" when there was no "meaningful father-daughter relationship." *Gac, supra,* 351 *N.J.Super.* at 64–65, 796 *A.*2d 951 (quotations omitted).

At the remand hearing held on February 10, 2003, Alyssa and defendant both testified. In a subsequent letter opinion, the trial court summarized the testimony, made findings of fact, and concluded that "[e]ven though Mr. Gac might not have paid much for Alyssa's education had the marriage lasted, ... he has some responsibility for her higher undergraduate education." The trial court ordered defendant to pay 40% of Alyssa's loans plus interest on that debt that had accumulated from the outset, adding that "Alyssa chose [to attend] a more expensive school" than necessary, without any consultation with her father.

Defendant again sought relief in the Appellate Division. In an unpublished opinion, the Appellate Division expressed the difficulty in properly balancing the *Newburgh* factors in this case because there were equitable considerations supporting each side. The panel accepted the trial court's finding that Alyssa still feared her

father and agreed that was relevant to the trial court's weighing of the *Newburgh* factors. The panel balanced the finding that Alyssa should not be penalized for her estrangement from her father against the findings that defendant was not consulted when Alyssa incurred college expenses, a less expensive college was not considered, and defendant paid $225 a month in child support throughout Alyssa's four years in college. The court found it significant that plaintiff's cross-motion was not made until after Alyssa completed college and after defendant moved to terminate his child support obligation, but concluded that defendant must contribute to his daughter's college loans. The panel disagreed, however, with the amount of the trial court's award, found it prudent to terminate the litigation, and ordered defendant to reimburse Alyssa $20,000, inclusive of interest.

We granted defendant's petition for certification. 185 *N.J.* 35, 878 *A.*2d 852 (2005). We subsequently granted amici curiae status to the New Jersey State Bar Association (Association) and the New Jersey Chapter of the American Academy of Matrimonial Lawyers (Academy).

## II.

Defendant argues that a parent who would not have contributed to his child's college education if the family had remained together should not have to contribute to that child's college education after a divorce. Essentially, defendant asserts that the first *Newburgh* factor, which addresses that issue, is a threshold question. Defendant also argues, for the first time in his petition for certification, that it is a violation of the United States and New Jersey Constitutions to compel divorced parents, but not married parents, to pay for their children's college educations. In contrast, plaintiff argues that the lack of a relationship between defendant and his daughter and the court's finding that he would not have paid for college expenses if the family remained intact are only two factors among many to be weighed under *Newburgh*. Plaintiff also contends that this Court should not consider the constitutional

argument because defendant failed to raise it in the prior proceedings, but if the Court addresses the argument, there is no constitutional violation. The Association as amicus curiae takes no position regarding the merits of the appeal but asserts that the *Newburgh* factors should remain determinative in setting a non-custodial parent's contribution to his or her child's college education. The Association urges that a parent's constitutional rights are protected through the highly deliberate and detailed approach required when the *Newburgh* factors are considered.

Similarly, the Academy takes no position on the merits. It urges that an obligation of divorced parents to contribute to their children's college educations under appropriate circumstances as defined in *Newburgh* does not violate either the United States or New Jersey Constitutions. The Academy notes that except for Pennsylvania, no other state has found a constitutional infringement.

### III.

The need and capacity of a child for higher education are two of the many factors that a court must consider in determining the amount of child support to order. *N.J.S.A.* 2A:34–23(a)(5). In general, a parent's responsibility to pay child support terminates when the child is emancipated. *See Newburgh, supra,* 88 *N.J.* at 542–43, 443 *A.*2d 1031. We noted in *Newburgh* that "[e]mancipation can occur upon the child's marriage, [upon] induction into military service, by court order based on the child's best interests, or by attainment of an appropriate age." *Id.* at 543, 443 *A.*2d 1031 (citations omitted). The facts of each case will control when a child is emancipated. Although there is no fixed age when emancipation occurs, *N.J.S.A.* 9:17B–3 provides that when a person reaches eighteen years of age, he or she shall be deemed to be an adult.

The Legislature and our courts have long recognized a child's need for higher education and that this need is a proper consideration in determining a parent's child support obligation.

Writing for the Court in *Newburgh, supra,* Justice Pollock set forth a non-exhaustive list of twelve factors a court should consider in evaluating a claim for contribution toward the cost of higher education. 88 *N.J.* at 545, 443 *A.2d* 1031. The enumerated factors are

(1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child.

[*Ibid.*]

"Six years [after *Newburgh* was decided], the Legislature essentially approved those criteria when amending the support statute, *N.J.S.A.* 2A:34–23(a). *Compare N.J.S.A.* 2A:34–23(a) (listing factors to consider in determining support) *with Newburgh, supra,* 88 *N.J.* at 545, 443 *A.2d* 1031 (listing factors to consider in determining payment of education expenses)." *Kiken v. Kiken,* 149 *N.J.* 441, 449, 694 *A.2d* 557 (1997). Thus, a trial court should balance the statutory criteria of *N.J.S.A.* 2A:34–23(a) and the *Newburgh* factors, as well as any other relevant circumstances, to reach a fair and just decision whether and, if so, in what amount, a parent or parents must contribute to a child's educational expenses.

In the first appeal of this matter, the Appellate Division rightly concluded that a remand was necessary for the trial court to make findings of fact and conclusions of law. *Gac, supra,* 351 *N.J.Super.* at 65, 796 *A.2d* 951. The Appellate Division emphasized several relevant facts the court should consider on remand. *See id.* at 63–64, 796 *A.2d* 951. In particular, the court cited *Moss, supra,* 289 *N.J.Super.* at 353, 674 *A.2d* 174, where the Appellate

Division affirmed an order rejecting a claim for contribution to college expenses in a case with facts similar to the present case. *Gac, supra,* 351 *N.J.Super.* at 64–65, 796 *A.*2d 951. Nevertheless, the Appellate Division cautioned:

> We do not read *Moss* as holding that a child's rejection of a parent's attempt to establish a mutually affectionate relationship invariably eradicates the parent's obligation to contribute to the child's college education. In this case, for example, a judge could reasonably find from the evidence that defendant's abusive conduct during the marriage so traumatized the children as to render nugatory any real possibility of a rapprochement. In that event, it would not be reasonable to penalize Alyssa for the defendant's misconduct. Nor would it be reasonable to reward defendant by removing his financial obligation to contribute to his daughter's college costs. There are indeed circumstances where a child's conduct may make the enforcement of the right to contribution inequitable, but here it is claimed that it was the defendant himself who was the architect of his own misfortune.
>
> [*Id.* at 65, 796 *A.*2d 951.]

We turn now to analyze the particular circumstances of this case to ascertain whether defendant must contribute to his daughter's educational expenses. Defendant argues that based solely on the trial court's finding that it was unlikely he would have contributed willingly to Alyssa's education if the family had remained intact, he should not be compelled to contribute to Alyssa's education. We disagree with that argument.

Defendant remarried and has a daughter and two stepchildren from that marriage. In his original certification in support of his motion to terminate child support, defendant noted his limited resources and stated that since the divorce in June of 1987, he had consistently paid child support and continued to do so even after his son was emancipated. He sought to terminate support so he could apply that money towards the needs of his current family and perhaps establish an educational fund for his five-year-old daughter.

It is self-evident that it is a difficult task for the fact-finder to determine what a parent's behavior would have been if the family had remained intact. Once divorce enters the picture, any effort to gauge how parents would have reacted to educational expenses if they had remained married is fraught with uncertainty. This

case is a prime example of that. As noted, although defendant testified that he made no contributions to his stepdaughter's college education beyond an occasional $100 gift, he certified in support of his motion to terminate child support that he wanted to establish an educational fund for his daughter from his second marriage. Those inherently contradictory claims highlight the speculative nature of defendant's argument.

Unique problems arise when parents divorce. The heightened economic concerns and animosity that may develop as part of the divorce process in all too many cases may influence a parent's viewpoint as to how he or she would have acted if the family had remained together. Consequently, we have no hesitation in concluding that the first *Newburgh* factor is not a threshold factor, but rather, is one of the numerous factors to be evaluated and weighed in determining whether a non-custodial parent must contribute to higher education expenses.

In assessing the *Newburgh* factors, the trial court found: (1) defendant likely would not have assisted Alyssa willingly had the family remained intact; (2) defendant's values and goals towards higher education likely would not have led him to pay for Alyssa's college education; (3) Alyssa never sought a relationship with defendant and never asked him to contribute to her educational loans until defendant sought to terminate support; (4) defendant earned $50,000 in 2000, and his child support obligation was terminated, while plaintiff's financial resources were limited; (5) Alyssa could have applied to and attended state universities and community colleges in New Jersey or Vermont, but instead she selected an expensive private school; (6) Alyssa was highly motivated to obtain a college degree; (7) Alyssa received loans from her maternal grandparents and earned $6,921 in 1999, $8,070 in 2000, and $11,573 in 2001; (8) Alyssa's ability to work during her first two years at Quinnipiac was hindered because she required extensive tutoring; (9) Alyssa obtained all the financial aid she could and received no grants; (10) Alyssa and defendant had no relationship; (11) defendant followed Dr. Hagovsky's recommen-

dations to send cards and tried to cultivate a relationship with Alyssa, but his many attempts were rebuffed; (12) Alyssa did not speak to her father about her post-secondary education or ask him to help fund it; (13) defendant was largely to blame as a result of "the atmosphere created by [him] and the impression on Alyssa as set forth in full detail in the report of Dr. Hagovsky"; (14) Alyssa's summer and school-year employment contributed little to her college costs; and (15) Alyssa desired a career in business and obtained employment as a restaurant manager. Based on those factual findings, we conclude that a fair balancing of the *Newburgh* factors and other pertinent facts favors defendant's position that he should not have to contribute to Alyssa's educational expenses.

A relationship between a non-custodial parent and a child is not required for the custodial parent or the child to ask the non-custodial parent for financial assistance to defray college expenses. Even though Alyssa did not have a relationship with her father, plaintiff nonetheless received child support for Justin and Alyssa during this entire period and could have sought additional support for Alyssa's education. Also, if Alyssa wanted financial assistance from her father, she could have made the request before she incurred her college expenses. Neither plaintiff nor Alyssa made such a request until after defendant sought to terminate child support, and Alyssa had graduated from college. The failure of both plaintiff and Alyssa to request that defendant assist in paying Alyssa's educational expenses at a time that would have enabled defendant to participate in Alyssa's educational decision as well as to plan for his own financial future weighs heavily against ordering him to contribute to her educational expenses after her education was completed.

Obviously, the factors set forth in *Newburgh* and reaffirmed today contemplate that a parent or child seeking contribution towards the expenses of higher education will make the request before the educational expenses are incurred. As soon as practical, the parent or child should communicate with the other parent concerning the many issues inherent in selecting a college.

At a minimum, a parent or child seeking contribution should initiate the application to the court before the expenses are incurred. The failure to do so will weigh heavily against the grant of a future application.[1]

Here, plaintiff did not seek contribution from defendant until after Alyssa graduated from college and after defendant sought to terminate his child support obligation. We conclude that those facts are significant and tip the scale in favor of denial of plaintiff's request for contribution. It was a mistaken exercise of discretion for the trial court to order otherwise.

## IV.

The courts below understood this case to be about the proper balancing of the *Newburgh* factors within the framework of the circumstances presented. For the first time, before this Court, defendant advances a constitutional argument.

On numerous occasions, we have expressed our reluctance to decide issues that were not addressed in the trial court or the Appellate Division. *See, e.g., Printing Mart–Morristown v. Sharp Elecs. Corp.*, 116 *N.J.* 739, 761, 563 *A.*2d 31 (1989). We have applied that principle even when a constitutional issue is presented. *See Farley v. $168,400.97*, 55 *N.J.* 31, 46, 259 *A.*2d 201 (1969); *Roberts Elec., Inc. v. Founds. & Excavations, Inc.*, 5 *N.J.* 426, 429, 432, 75 *A.*2d 858 (1950). Recently, we restated that a constitutional issue should not be decided "unless its resolution is imperative to the disposition of litigation." *Randolph Town Ctr., L.P. v. County of Morris*, 186 *N.J.* 78, 80, 891 *A.*2d 1202 (2006) (citations omitted).

It is not necessary for the disposition of this appeal that we decide the constitutional issue, and we therefore decline to do so.

---

[1] Because defendant did not raise the laches doctrine, we do not address it.

## V.

In summary, we hold that a fair evaluation of the *Newburgh* factors, the criteria in *N.J.S.A.* 2A:34–23(a), and in particular the lateness of the application, require the conclusion that plaintiff's request for defendant to contribute to his daughter's college loans be denied.

## VI.

The judgment of the Appellate Division is reversed. We remand for entry of an order consistent with the views expressed herein.

*For reversal and remandment*—Chief Justice PORITZ and Justices LONG, LaVECCHIA, ZAZZALI, ALBIN, WALLACE and RIVERA–SOTO—7.

*Opposed*—None.