# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-5437-16T3

C.P.,

     Plaintiff-Respondent,

v.

M.A.P.,

     Defendant-Appellant.

_____

Argued May 13, 2019 – Decided August 1, 2019

Before Judges Messano and Fasciale.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hunterdon County, Docket No. FM-10-0282-08.

M.A.P., appellant, argued the cause pro se.

Michael Charles Cascio argued the cause for respondent (C.P., on the pro se brief).

PER CURIAM

Following thirty-three days of trial, the Family Part judge entered a dual judgment of divorce that terminated the parties' twenty year marriage but did

not address issues of equitable distribution, child support for their daughter, O.P. (Ophelia), born March 1998, and son, J.P. (Joseph), born October 1999, and counsel fees.[1] Ten months later in June 2017, after considering post-trial submissions, the judge filed an amended dual final judgment of divorce (JOD), along with a ninety-two page written opinion addressing these issues.

As to equitable distribution, the JOD awarded the marital home to plaintiff-wife, subject to the existing mortgage for which she was solely responsible, ordered that defendant-husband would retain his pre-complaint 401K account that he had already liquidated during the litigation, and both would retain "all of their post-[c]omplaint assets." Critically, the JOD provided:

> Any other equitable distribution claims of the parties, including but not limited to, [d]efendant's law practice and [p]laintiff's tax credit business ownership interest are denied as without factual and/or legal basis. The [p]laintiff held no ownership interest in any business pre-[c]omplaint, and [d]efendant failed to produce [c]ourt ordered discovery as to his law practice necessary to value same.

The JOD awarded plaintiff sole legal custody of Joseph, with parenting time for defendant subject to his "initiation of reunification therapy" as ordered by the court more than three years earlier. Although the JOD noted Ophelia was

---

[1] The record is sealed, so we use initials and pseudonyms.

A-5437-16T3

legally an adult, she was "not . . . deemed emancipated for purposes of child support, college education expenses and other child-related expenses." The JOD ordered defendant to pay child support of $2000 per month and generally provided for both parties to share equally in expenses for extracurricular activities and unreimbursed medical expenses for the children. The JOD also required defendant and plaintiff to share equally the children's college education expenses, commencing with Ophelia's fall 2016 semester.

The JOD ordered defendant to pay plaintiff $125,000 in counsel fees and expenses, and reduced that amount to judgment "[d]ue to . . . defendant's extensive history of non-compliance with [c]ourt ordered obligations throughout the history of the litigation." On the same day the court filed the JOD, it entered an order denying defendant's motions made during trial to (1) move back to the marital home, and (2) reconsider or stay several awards of counsel fees and sanctions entered against him prior to trial (the June 2017 fee order).

Defendant appeals. He argues that we must reverse the equitable distribution provisions of the JOD because the judge wrongfully denied distribution of plaintiff's ownership interest in a business, which defendant claims she acquired during the marriage "or . . . fraudulently deferred to deprive [him] of that asset." Defendant contends the award of the marital home to

plaintiff without any equitable distribution was "erroneous as a matter of law," and, in any event, he was entitled to equitable distribution of rental income plaintiff received while leasing the marital home.

Defendant argues the child support award was "based upon a patently biased and false representation of the trial record" and violated the child support Guidelines. He also argues that Ophelia was emancipated, and therefore his support obligations have terminated. Defendant contends the fee awards in the JOD and the June 2017 fee order are "unjustified, excessive and punitive." Finally, defendant contends that we must vacate the JOD and June 2017 fee order because they are products of the trial judge's bias and "collusive relationship with counsel for plaintiff."

We have considered these arguments in light of the voluminous record and applicable legal principles. We affirm.

I.

The trial judge's written opinion summarized the trial testimony and evidence at length, and we recount the judge's factual findings and conclusions only as necessary to consider the legal arguments now raised.

Plaintiff and defendant are attorneys, although plaintiff never actively practiced and worked in "the specialized field [involving] the sale of tax credits

4

. . . in the film and arts . . . industr[ies]." The judge found her to be "a very credible witness" and found defendant was "not . . . a credible witness." The parties married in 1996 and lived in the marital home for approximately ten years before plaintiff filed for divorce in 2007. Plaintiff and defendant continued to reside in the home after the complaint was filed until 2008, when plaintiff obtained a temporary and then final restraining order that removed defendant.

Plaintiff lived with the children in the marital home until late summer 2013, when she moved to another home with her boyfriend. Plaintiff paid all expenses, including the monthly payments on a mortgage balance of $249,836, as of June 2015, and had reduced the mortgage principal by approximately $36,000 to $37,000. The shelter expenses were offset partially by a tenant's monthly rent of $2200. Neither party offered an appraisal of the home's value at trial, but plaintiff provided an estimate during her testimony and, in an earlier filed Case Information Statement (CIS), defendant estimated it was worth $300,000.

The judge found plaintiff was in the best position to value the home and accepted her estimate of $390,000. He divided the $140,000 in equity in half, and reduced defendant's share by one-half the reduction in principal plaintiff

made through mortgage payments. The judge then gave plaintiff credit for one-half of each joint marital credit card debt, home repairs, Ophelia's car insurance payments, and Joseph's private school tuition costs. The judge gave plaintiff credit for one-half of defendant's 401K. As to the remaining $29,200 of defendant's "50% putative equity share," the judge concluded it "shall be zeroed out in consideration of the plethora of pre-trial legal fee awards entered against [d]efendant which have not been paid."

The judge found plaintiff's average income from 2012 to 2014 was $226,000, and she anticipated making $240,000 in 2015. She was employed by The Tax Transfer Corporation, LLC (Tax Transfer) prior to filing her divorce complaint, after which she was employed by Tax Credits, LLC (Tax Credits), which shared a common owner with Tax Transfer. When trial commenced in 2015, plaintiff was employed by Incentives Associates, LLC (Incentives), where she was a one-third owner, and Tax Credits and Tax Transfer were out of business. Incentives was the United States representative of Tax Credits International, a Puerto Rican company owned by plaintiff's boss at Tax Credits and Tax Transfer. Incentives bought the Tax Credits name for a nominal price in 2015 so that it could "continue with the brand" in New Jersey. Plaintiff

6

testified that she was a W-2 employee of Tax Credits and had never been an owner of either Tax Transfer or Tax Credits.

The judge concluded that despite extensive cross-examination and "a plethora of documents," defendant failed to show plaintiff had an ownership interest in either company, and she was "a salaried-plus-bonus employee and ha[d] worked solely as an employee during her marriage and post-[c]omplaint."

As to defendant's financial circumstances, the judge noted that he had failed to file a CIS after 2014 and "failed to comply with financial discovery, including documentation pertaining to his law practice." The judge drew a negative inference from defendant's "refusal to provide financial discovery or provide meaningful testimony regarding his law practice, despite numerous" court orders. He concluded that defendant had "intentionally sought to deprive th[e c]ourt of complete financial documentation[.]" Based on tax returns, however, the judge found that defendant's average annual income during the three-year period of 2012 to 2014 was $318,000, and the average during the five-year period of 2010 to 2014 was $201,700. For purposes of setting child support, the judge found that "the income of the parties exceed[ed] the maximum income level under the . . . Guidelines," both were "equally capable of contributing to the general support and education of the children and

maintaining their lifestyle" and both children had "the ability and desire to continue on to higher education." He also found that the parties had not established educational savings that would defray college expenses.

In computing child support, relying upon the three-year average of $226,000 annual income for plaintiff and the five-year average of $201,700 annual income for defendant, the judge set plaintiff's share at fifty-three percent and defendant's at forty-seven percent. Considering the factors in N.J.S.A. 2A:34-23, and citing our decision in Jacoby v. Jacoby, 427 N.J. Super. 109, 113 (App. Div. 2012), the judge ordered defendant to pay $2000 per month in child support.

Because it relates to defendant's claim regarding Ophelia's emancipation, we set forth the judge's relevant findings regarding defendant's relationship with the children. At trial, the judge conducted in camera interviews with both Ophelia and Joseph, and he heard pre-trial conversations with defendant recorded by them. He considered as well plaintiff's expert and defendant's expert witnesses, who expressed opposing views as to whether plaintiff fostered the children's alienation and estrangement from their father. The judge rejected defendant's claim of parental alienation and concluded defendant's "behavior . . . harmed his children emotionally, and he [was] either unwilling or unable to

eliminate that harm. The children are estranged from their father simply because of his bad behavior."

The judge concluded that defendant's "dilatory, deceptive, and bad-faith litigation of th[e] case" warranted an award of counsel fees. He found that defendant "initiated a 'scorched earth' strategy[,]" filing "numerous, duplicitous applications, numerous appeals, refused to provide discovery, refused to abide by [c]ourt [o]rders, and raised frivolous issues without legal or factual justification." The judge noted plaintiff's "legal tactics and positions were well-founded[,]" pursued "in good faith" and largely successful. After detailing defendant's conduct lengthening and complicating the matter and examining each of the nine factors identified in Rule 5:3-5(c), the judge ordered defendant to pay $125,000 in counsel fees.

A written statement of reasons accompanied the June 2017 fee order, which itself referenced prior awards of attorney's fees in orders dated June 16, 2015 ($2764.50); June 18, 2015 ($3075); June 19, 2015 ($7500); and July 1, 2015 ($1500), together with underlying rulings that defendant had violated litigant's rights. The judge concluded defendant failed to demonstrate he was entitled to reconsideration of the prior orders under Rule 4:49-2, or relief under Rule 4:50-1.

II.

A.

"We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "Thus, 'findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence.'" Id. at 283 (quoting Cesare, 154 N.J. at 411-12). We review the judge's legal conclusions de novo. Ibid.

"The Legislature has limited the property that is subject to equitable distribution to 'property, both real and personal, which was legally and beneficially acquired by [the parties] or either of them during the marriage or civil union.'" Id. at 284 (quoting N.J.S.A. 2A:34-23(h)). "The goal of equitable distribution . . . is to effect a fair and just division of marital assets." Steneken v. Steneken, 367 N.J. Super. 427, 434 (App. Div. 2004) (citing Rothman v. Rothman, 65 N.J. 219, 228-29 (1974)), aff'd as mod., 183 N.J. 290 (2005). Although a court shall consider the factors enumerated in N.J.S.A. 2A:34-23.1 in making an equitable distribution, "the manner of distribution . . . remains

within the broad discretion of the trial court." Id. at 435 (citing Borodinsky v. Borodinsky, 162 N.J. Super. 437, 443 (App. Div. 1978)).

Defendant contends that the judge should have included plaintiff's alleged ownership interests in Tax Credits as an asset subject to equitable distribution. Actually, the argument is more appropriately that the judge abused his discretion in not permitting a re-opening of discovery shortly before trial so defendant's forensic financial expert could conduct a full examination of plaintiff's assertion that she was not an owner.

The parties sparred over the relevance and sufficiency of discovery on plaintiff's alleged ownership interests as early as 2009. Defendant's expert eventually identified twenty-three categories of documents he needed to inspect, and, plaintiff's counsel later claimed to have provided all the relevant documents in plaintiff's possession in January 2010. Defendant never challenged the adequacy of the document production again until a March 2015 case management conference, after the judge ordered defendant to sit for his deposition and produce financial data related to his law practice. Defendant had no specific list of alleged deficiencies, but rather told the judge he could produce one within ten days. It suffices to say that the exchanges between the judge and

defendant grew more heated, before the judge declined to permit further discovery on the issue.

We will not intervene "but instead will defer to a trial judge's discovery rulings absent an abuse of discretion or a judge's misunderstanding or misapplication of the law." Capital Health Sys., Inc. v. Horizon Healthcare Servs., Inc., 230 N.J. 73, 79-80 (2017) (citing Pomerantz Paper Corp. v. New Cmty. Corp., 207 N.J. 344, 371 (2011)). We find no mistaken exercise of the judge's discretion.

Defendant argues the judge abused his discretion because he compelled continued discovery from defendant but refused defendant the ability to reopen discovery on this issue. This overlooks, of course, that defendant sought historical data to prove a past association which plaintiff claimed had already been furnished, while the judge ordered defendant to produce current financial data relevant, if for no other reason, than to set a child support award. Defendant argues the judge abused his discretion by barring defendant's expert from testifying, but that overlooks the fact that the expert initially said in 2009 that he could not render an opinion without additional information, and defendant never claimed the discovery plaintiff provided thereafter was deficient. Nevertheless, there was no expert report produced for trial.

Regarding the marital home, defendant contends the judge provided plaintiff with "a complete windfall from any eventual sale[,]" and he received nothing. However, the judge computed the equity in the home and credited plaintiff with $37,000, the undisputed post-complaint reduction in mortgage principal. He then awarded defendant one-half of the balance. Defendant was not entitled to retain the home or retain an interest in it until it was sold; in equitably distributing marital assets, a trial court is permitted to award a party the "monetary equivalent" of a marital asset. Borodinsky, 162 N.J. Super. at 443.

Defendant claims the offsets applied to reduce his balance in the home's equity were "fabricated." However, there was sufficient credible evidence in the record to support the judge's factual findings as to each and every offset. Defendant's arguments to the contrary lack sufficient merit to warrant further discussion. R. 2:11-3(e)(1)(E).

We also reject defendant's argument that the judge erred as a matter of law by accepting plaintiff's valuation of the marital home without requiring expert testimony. Since defendant did not produce an expert himself, nor object to the absence of an expert at trial, we consider the argument under the plain error standard. R. 2:10-2.

Clearly, the trial court must decide "what specific property of each spouse is eligible for distribution," determine the value of that property, and decide upon the most equitable allocation between the parties. Genovese v. Genovese, 392 N.J. Super. 215, 225-26 (App. Div. 2007) (quoting Rothman, 65 N.J. at 232); see also M.G. v. S.M., 457 N.J. Super. 286, 295 (App. Div. 2018) (noting the policies underlying equitable distribution are "best implemented by evaluating the facts and evidence associated with each asset"). We have cautioned trial courts against "fixing market value of real property without the benefit of expert appraisal evidence." Jacobitti v. Jacobitti, 263 N.J. Super. 608, 613 (App. Div. 1993), aff'd, 135 N.J. 571 (1994).

However, under the circumstances, we will not upset the judge's findings and remand simply to have him revisit this issue after ordering an appraisal. See ibid. ("[I]t would be an injustice to remand this matter for proof of the marital dwelling's value where so little is at stake."). The lack of any appraisal is partially defendant's fault; defendant's estimate was nearly $100,000 less than plaintiff's, which, if accepted by the judge, would have actually reduced defendant's equitable share; there is nothing in the record to suggest plaintiff's estimate is so low that a remand "could substantially alter the market value fixed by the trial court." Id. at 613-14.

14

Lastly, defendant argues he was "entitled to receive one-half of the net income" from plaintiff's rental of the marital home, and belatedly contends plaintiff lacked legal authority to rent the home without his consent. See, e.g., Cherry v. Cherry, 168 N.J. Super. 386, 390 (Law Div. 1979) ("The basic issue in this case is whether Cherry, as tenant by the entirety, had the right to lease the premises without the consent of Mrs. Cherry, the cotenant. I conclude that he could not do so."). Cherry was not binding on the trial court, is not binding on us, and has never been cited by any other state court in New Jersey.

Moreover, even if the legal principle of the case is sound, defendant's remedy would be to share the net income from the rental with plaintiff. Id. at 392 (holding that Mrs. Cherry was "entitled to receive one-half of the net income from the premises" as a remedy). However, there was no net income. The monthly rent did not cover the monthly mortgage payments, insurance costs and repairs. Plaintiff paid for every shortfall because defendant undisputedly failed to pay for anything. Additionally, defendant sought to return to the home after the trial started in 2015, even though he was aware the home was being rented before then. We affirm the JOD's equitable distribution provisions.

B.

Defendant contends the child support provisions of the JOD should be set aside because they exceed the Guidelines, the judge used different time-frames for averaging the parties' annual income, and defendant was "double-billed" for Ophelia's support, since he was also required to pay for her college expenses. We reject the arguments.

The parties' income exceeded the current Guidelines. See Schedule of Child Support Awards, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-F to R. 5:6A, www.gannlaw.com (2019). In such circumstances, trial courts should apply the guidelines up to the maximum and then to make an additional award, the amount of which should be determined by considering the factors enumerated in N.J.S.A. 2A:34-23(a). Connell v. Connell, 313 N.J. Super. 426, 431 (App. Div. 1998). That is precisely what the judge did here.

As for income averaging, defendant fails to note that he benefitted by the judge's decision to use only plaintiff's earnings for the last three years prior to trial. Had the judge used five, as he did for defendant, plaintiff's average would have fallen, and the ratio between the two averages would have tilted in her favor. In any event, while the judge failed to explain his rationale, we cannot

conclude he mistakenly exercised his discretion.[2]  Tannen v. Tannen, 416 N.J. Super. 248, 278 (App. Div. 2010), aff'd o.b., 208 N.J. 409 (2011).

We have recognized that paying a child's college expenses does not eliminate, or even necessarily reduce, expenses associated with that child's ongoing primary residence.  See Jacoby, 427 N.J. Super. at 121 (noting that support awards can recognize the "continued need to maintain a local residence for a child who returns home from college during school breaks and vacations"); Dunne v. Dunne, 209 N.J. Super. 559, 570 (App. Div. 1986) ("Common sense dictates that a college student requires more for support than a student in high school.").  The judge was entitled to credit plaintiff's testimony regarding the child-related expenses, and defendant fails to identify what specific expenses were duplicative.

In a separate point, defendant contends the judge erred "as a matter of law and fact" in finding Ophelia was not emancipated.  "Deciding whether a child is emancipated requires a fact-sensitive analysis."  Ricci v. Ricci, 448 N.J. Super. 546, 571-72 (App. Div. 2017) (citing Newburgh v. Arrigo, 88 N.J. 529, 543 (1982), holding modified on other grounds, Heuer v. Heuer, 152 N.J. 226

---

[2] Perhaps the judge took plaintiff's projection of her current salary into account and decided the three-year average was a more realistic projection of income going forward.

(1998)).  "[T]he essential inquiry is whether the child has moved 'beyond the sphere of influence and responsibility exercised by a parent and obtains an independent status of his or her own.'"  Filippone v. Lee, 304 N.J. Super. 301, 308 (App. Div. 1997) (quoting Bishop v. Bishop, 287 N.J. Super. 593, 598 (Ch. Div. 1995)).

Prima facie proof of emancipation is established when the child reaches the age of eighteen, resulting generally in termination of the parental support obligation.  Ricci, 448 N.J. Super. at 572.  The child's enrollment in a full-time post-high school educational program may compel continued support.  Ibid.  "In this regard, college costs are recognized as a form of support for unemancipated children."  Id. at 572-73 (citing Gac v. Gac, 186 N.J. 535, 542 (2006)).  "[A] trial court should balance the statutory criteria of N.J.S.A. 2A:34-23(a) and the Newburgh factors, as well as any other relevant circumstances, to reach a fair and just decision whether and, if so, in what amount, a parent or parents must contribute to a child's educational expenses."  Gac, 186 N.J. at 543.  The trial judge did that in this case.

Citing Gac, defendant argues that he should not be compelled to pay for Ophelia's college costs because he is estranged from the children and was not consulted.  The Gac Court specifically noted, however, that "[a] relationship

between a non-custodial parent and a child is not required for the custodial parent or the child to ask the non-custodial parent for financial assistance to defray college expenses." Id. at 546.

Moreover, although the Court in Gac held that the non-custodial parent was not obliged to contribute to his daughter's college education costs, the facts in that case are distinguishable. Perhaps most importantly, the non-custodial parent in Gac was not asked to contribute anything until after his daughter had graduated from college, which deprived him of any opportunity to participate in the college decision or to plan his own finances to pay for college. Id. at 546-47. In addition, the Court considered it relevant that the non-custodial parent "likely would not have assisted [his daughter] willingly had the family remained intact[,]" and his "values and goals towards higher education likely would not have led him to pay for [her] college education[.]" Id. at 545.

Here, while he was not consulted prior to Ophelia's specific choice of a college, unlike the non-custodial parent in Gac, the judge specifically found that both parents appreciated their children's needs and desires for higher education following high school. Moreover, despite defendant's continued protestations to the contrary, the record provides ample support for the trial judge's conclusion that defendant was responsible for the estrangement of his children, and it was

19                                                                              A-5437-16T3

not the result of plaintiff's allegedly successful alienating conduct. We affirm the child support provisions of the JOD, including the determination that Ophelia is not emancipated and defendant shall contribute to her college expenses.

C.

Defendant contends that the award of counsel fees was contrary to legal principles, failed to consider plaintiff's bad faith, and was result of the judge's bias. An award of attorneys' fees in a matrimonial action is discretionary. Eaton v. Grau, 368 N.J. Super. 215, 225 (App. Div. 2004). We will only disturb a trial court's determination on the "rarest occasion" because of a "clear abuse of discretion." Slutsky v. Slutsky, 451 N.J. Super. 332, 365-66 (App. Div. 2017) (quoting Strahan v. Strahan, 402 N.J. Super. 298, 317 (App. Div. 2008)). Before making any award, the judge is required to consider the factors in Rule 5:3-5(c), which the trial judge did.

The judge's written decision detailed defendant's largely unsuccessful, at times frivolous, bad-faith-motivated conduct during eight years of litigation. We find no reason to reverse an award of counsel fees that largely rested upon factors (3), (7), (8) and (9) in the Rule and was fully supported by those factors.

Defendant's assertions to the contrary are without sufficient merit to warrant discussion.  R. 2:11-3(e)(1)(E).

Finally, not only within the context of defendant's challenge to the fee award, but also with respect to his challenge to all financial issues in the case, and, implicitly to the June 2017 fee order, defendant argues the trial judge's "blatant bias and hostility against [him], and [the judge's] collusive relationship with counsel for plaintiff[,]" tainted all proceedings and compel reversal.  We have reviewed all the transcripts provided and reject the argument out-of-hand.  R. 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-5437-16T3