**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1725-18T2

LAWRENCE R. BERKOWITZ,

     Plaintiff-Respondent/
     Cross-Appellant,

v.

LINDA BERKOWITZ, n/k/a
LINDA FRIEDMAN,

     Defendant-Appellant/
     Cross-Respondent.

_____

> Submitted January 27, 2020 – Decided March 2, 2020
>
> Before Judges Geiger and Natali.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County, Docket No. FM-12-2205-97.
>
> Dwyer, Bachman, Newman & Solop, attorneys for appellant/cross-respondent (Howard Alan Bachman, of counsel and on the briefs; Lauren A. Conway, on the briefs).
>
> The Weir Law Firm, LLC, attorneys for respondent/cross-appellant (Bonnie M. Weir and Marie-Christine Aziz, on the briefs).

PER CURIAM

Defendant Linda Berkowitz, now known as Linda Friedman, appeals from a November 9, 2018 Family Part order denying her post-judgment motion to compel plaintiff Lawrence R. Berkowitz to contribute to their son Zachary's college expenses for his sophomore, junior, and senior years, including loans taken out by Zachary and co-signed by defendant. Both parties appeal from the denial of their respective applications for counsel fees. We affirm.

The parties were married in October 1983. They have two children, Mitchell, born in 1988 and Zachary, born in 1992. The children have now completed college and are emancipated.

The parties were divorced on June 26, 1997. The judgment of divorce incorporated a Property Settlement Agreement (PSA) that the parties entered into. The PSA included provisions that addressed support for their children through college. Relevant here, paragraph 4 of the PSA states in pertinent part:

> A. It is anticipated that the children will attend college and both parties agree that they shall share the cost of attendance based upon their respective abilities to pay, taking into consideration the parties income and assets from all sources.
>
> The cost of college shall include, but not be limited to: tuition, room, board, travel expenses, books, telephone, athletic and club participations, fees and reasonable living expenses.

2

B. The choice of college shall be made by both parties and the child, with both parties fully involved in the application process. The parties' respective obligations, if any, shall follow after utilization of the child's individual assets, income, loans, grants, scholarships and aid.

In January 2010, a consent order was entered regarding Mitchell's trust fund and college expenses, as well as recalculation of child support. The parties agreed that: (1) the remaining money in Mitchell's trust fund would not be used for "college obligations" and he would have full control of the money following graduation; (2) child support would be reduced; and (3) they would equally share Mitchell's college cost and all related expenses.

In September 2011, Zachary began attending Bryant University. Apparently, plaintiff felt he was not fully involved in the decision for Zachary to attend Bryant and instead, wanted Zachary to attend James Madison University. Defendant contends Zachary applied there but was denied admission and that the costs to attend either university was similar. The parties equally split the initial seat deposit required by the university. The total tuition and costs for that year of study were also equally split by the parties.

Following Zachary's freshman year, plaintiff filed for personal bankruptcy and did not contribute to the cost of Zachary's education during his sophomore, junior, and senior years. Zachary graduated from Bryant in 2015.

A-1725-18T2

The parties contest who should be responsible for the cost of Zachary's last three years at Bryant. For Zachary's sophomore and junior year, a third-party private loan paid to finance his academic costs after applying grants, scholarship, and federal loans. Zachary signed and defendant co-signed a loan for $28,072 with Wells Fargo for his sophomore year and a second loan for $28,300 for his junior year to finance Zachary's college expenses. For Zachary's senior year, defendant paid $18,848 out-of-pocket for Zachary's tuition after applying the grants, scholarships, and federal loans Zachary received.

Correspondence Between Plaintiff and Defendant

Throughout each academic year the parties exchanged emails and letters by their attorneys regarding the costs and payment for Zachary's education.

An April 13, 2012 letter to plaintiff's counsel described the need to review child support when Mitchell graduated in May 2011 and again when Zachary began college in September 2011. The letter supplied defendant's 2010 and 2011 W-2s and pay stubs and asserted that plaintiff unilaterally reduced child support by fifty percent when Mitchell graduated.

An October 8, 2012 letter to plaintiff's counsel alleged a second unilateral child support reduction by plaintiff. It also alleged an error in the child support

calculation and that plaintiff did not contribute to the children's vision and dental costs.

During the summer between Zachary's sophomore and junior years the parties exchanged a series of emails. In July 2013, plaintiff emailed defendant stating he could not pay Zachary's college tuition that year, was unable to take out loans, and was is in the process of filing for personal bankruptcy. He further stated that he explained to Zachary that he would have to take out a private loan. Defendant responded she needed a letter regarding the bankruptcy to negotiate tuition with the university. Plaintiff replied that he would have his attorney send a letter.

In the summer between Zachary's junior and senior years the parties exchanged another set of emails. In July 2014, defendant forwarded a billing statement from the university to plaintiff. She stated that "I will be paying my [one-half] for this year. What is your plan? I will not be taking any more loans." Later that month, she emailed plaintiff again asking him to acknowledge the previous email. No response was provided in the record.

During a further email exchange in December 2014 and January 2015, defendant forwarded another billing statement from the university for Zachary's final semester to plaintiff. She stated that she met with the director of financial

5

aid to get Zachary another grant. Defendant also stated she paid over $14,000 for the previous semester and could not take out any more loans or pay for it by herself. She asked plaintiff how much of the final semester he would be paying to ensure Zachary graduates. Plaintiff replied:

> As you know I had to declare bankruptcy and therefore I am not in a position to be able to contribute towards his tuition. Thank you for all the help you have given him. At this point in time my suggestion would be for Zack to take out the loan for his last semester.

Defendant responded the next day, explaining that Zachary could not afford to incur another loan and she was unable to co-sign any additional loans because of her debts. In a later email, plaintiff reiterated that he could not help.

In an undated email, defendant advised plaintiff that Zachary's final semester was plaintiff's or his responsibility. It went on to state that Zachary was unable to obtain loan approval. Defendant asked plaintiff to confirm that he would reimburse her if she pays, reminding plaintiff, "[y]ou also agreed to pay half of all loans I took out." Plaintiff did not respond.

The 2015 Motion and Order

During Zachary's final semester of school, after all payments for his education had been made, defendant moved to have the court enforce the PSA and plaintiff's obligation to contribute to Zachary's education costs. The motion

6

sought to compel plaintiff to pay for fifty percent of: (1) the cost of Zachary's senior year tuition; (2) the cost of monthly student loans from Zachary's sophomore and junior years; (3) the cost of items for on-campus housing; and (4) the cost of food at school. Defendant also sought several other changes and payments regarding child support. The court denied the application in its entirety, but ordered both parties to submit financial documentation to determine the contribution amounts they were obligated to pay under the PSA.

The court determined the PSA did not require contributing fifty percent. Rather, contribution was based on the parties' respective ability to pay. The court stated that it would "maintain some obligation because [p]laintiff agreed to and did in fact contribute towards Zachary's freshman year." By doing so, the court found that plaintiff had indicated Bryant University was acceptable to him. The court concluded that the "parties' respective percentage obligations will be calculated after both parties submit their most recent financial information." Based on the record, this reassessment did not occur.

The 2018 Motion and Order

In October 2018, defendant filed a second motion to compel plaintiff to: (1) file an updated CIS; (2) impute gross income to plaintiff in the amount of $92,000 per year; (3) reimburse defendant for his fifty percent share of Zachary's

uncovered college tuition for the 2014-2015 school year; (4) reimburse defendant for $849.45 for his share of the Wells Fargo private student loans for July and August 2018; and (5) award counsel fees. Plaintiff cross-moved for counsel fees. The trial court issued an order and written statement of reasons denying defendant's motion without prejudice and the parties cross-applications for counsel fees and costs without prejudice.

Defendant argued that repayment of the student loans was deferred because of Zachary's enrollment in graduate school. The court noted defendant did not move to compel plaintiff to contribute to Zachary's sophomore, junior, or senior years of college until April 2015. The court emphasized that the 2015 order determined the consent decree for contribution to Mitchell's college costs did not modify the PSA as to Zachary. Rather, the 2015 order reaffirmed plaintiff's reimbursement obligation based on his ability to pay. The parties' contribution level was to be calculated after submission of current financial information.

The court rejected defendant's argument that the 2015 order modified the PSA. The court also found defendant did not comply with the order's financial disclosure requirements for three years.

The court then analyzed the parties' college expense contribution obligation under the PSA. It emphasized that the parties were only obliged to contribute after "utilization of the child's individual assets, income, <u>loans</u>, grants, scholarships and aid." The court stated that the obligation to contribute did not differentiate between private and federal loans and to do so would "attempt to essentially rewrite the parties' PSA." Therefore, it determined that plaintiff was not obligated to contribute to repayment of Zachary's private loans that defendant co-signed because the obligation to contribute only arose after applying Zachary's loans. The type of loan did not matter.

The court was skeptical about why Zachary was unable to obtain loans for his senior year. The court found defendant "implicitly acknowledges that . . . Zachary did not apply for loans consistent with the PSA . . . [or] consistent with what he had done for his [s]ophomore and [j]unior years." It reasoned that defendant's payments for Zachary's final year were voluntary because there was no apparent reason why Zachary could not have been able to obtain funding through another private loan. Thus, requiring plaintiff to contribute fifty percent of the final year expenses would be contrary to the plain language of the PSA. The court emphasized that Zachary had assured plaintiff that his contribution was not being sought and that defendant had not sought contribution until after

the costs were incurred. This was compounded, according to the court, by defendant's inaction for three years following the 2015 order.

Lastly, the court denied both parties' applications for counsel fees without prejudice. As for defendant's request, the court noted defendant's motion was denied in its entirety. It found plaintiff "does not have any ability to contribute to [defendant's] counsel fees, nor should he in light of the fact the [c]ourt finds her requests for relief to be unmeritorious." As for plaintiff's request, the court stated it did not find defendant's motion was filed in bad faith.

This appeal and cross-appeal followed. Defendant raises the following points:

> I. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO ENFORCE THE PARTIES' PROPERTY SETTLEMENT AGREEMENT AS IT RELATES TO ZACHARY'S COLLEGE EXPENSES BY RELIEVING THE PLAINTIFF OF HIS OBLIGATION TO CONTRIBUTE.
>
> II. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO ENFORCE THE MAY 18, 2015 ORDER AS IT RELATES TO ZACHARY'S COLLEGE EXPENSES.
>
> III. THE DOCTRINE OF LACHES DOES NOT APPLY TO THE INSTANT MATTER.

Plaintiff raises the following point in his cross-appeal:

THE TRIAL COURT ERRED IN FAILING TO ISSUE
A JUDGMENT FOR COUNSEL FEES IN FAVOR OF
THE PLAINTIFF.

## II.

Our review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). We "accord particular deference to the Family Part because of its 'special jurisdiction and expertise' in family matters." Harte v. Hand, 433 N.J. Super. 457, 461 (App. Div. 2013) (quoting Cesare, 154 N.J. at 413). Generally, "findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12 (citing Rova Farms Resort, Inc. v. Inv'rs Ins. Co. of Am., 65 N.J. 474, 484 (1974)). We will not disturb the factual findings and legal conclusions unless convinced they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Ricci v. Ricci, 448 N.J. Super. 546, 564 (App. Div. 2017) (quoting Elrom v. Elrom, 439 N.J. Super. 424, 433 (App. Div. 2015)).

"Discretionary determinations, supported by the record, are examined to discern whether an abuse of reasoned discretion has occurred." Ibid. (citing Gac v. Gac, 186 N.J. 535, 547 (2006)). An abuse of discretion occurs when a trial court "fail[s] to consider controlling legal principles," makes "findings

11

inconsistent with or unsupported by competent evidence," utilizes "irrelevant or inappropriate factors," and reaches a "decision [that] rest[s] on an impermissible basis." Elrom, 439 N.J. Super. at 434 (citations and internal quotation marks omitted).

We do not accord special deference to the Family Part's interpretation of the law. D.W. v. R.W., 212 N.J. 232, 245 (2012) (citing N.J. Div. of Youth & Family Servs. v. I.S., 202 N.J. 145, 183 (2010)). Challenges to legal conclusions, as well as a trial court's interpretation of the law, are subject to de novo review. Ricci, 448 N.J. Super. at 565 (citing Reese v. Weis, 430 N.J. Super. 552, 568 (App. Div. 2013)).

We review an order regarding attorney's fees in a matrimonial case to determine if the trial court abused its discretion. Harte, 433 N.J. Super. at 465-66 (citing J.E.V. v. K.V., 426 N.J. Super. 475, 492 (App. Div. 2012)). We "will disturb a trial court's determination on counsel fees only on the 'rarest occasions, and then only because of a clear abuse of discretion.'" J.E.V., 426 N.J. Super. at 492 (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

A court may award counsel fees in a matrimonial matter and "shall consider the factors set forth in the court rule on counsel fees, the financial circumstances of the parties, and the good or bad faith of either party." N.J.S.A.

2A:34-23. Our Court Rules provide that a trial judge may, in his or her discretion, award counsel fees in a matrimonial action. R. 5:3-5(c).

### III.

We affirm substantially for the reasons expressed by the trial court in its written statement of reasons. We add the following comments.

The trial court's analysis of plaintiff's responsibility for contributing to Zachary's college expenses is supported by the terms of the PSA and the record. We discern no abuse by the trial court.

The plain and unambiguous language of the PSA only obligated plaintiff to contribute to Zachary's college expenses after "utilization of the child's individual assets, income, loans, grants, scholarships and aid." The PSA did not differentiate between private and federal loans. Accordingly, plaintiff was not obligated to contribute to repayment of Zachary's private loans that defendant co-signed because he was only obligated to contribute after applying Zachary's loans.

As to the cost of Zachary's senior year, the court found Zachary did not apply for loans consistent with the PSA and there was no apparent reason why he would not have been able to obtain funding through another private loan. Zachary was obligated to so under the PSA. By failing to demonstrate that

Zachary had diligently applied for college loans to finance his senior year, defendant did not establish plaintiff was required to contribute or that he had violated the PSA. In any event, requiring plaintiff to contribute fifty percent of the final year expenses would be contrary to plain language of paragraph 4A of the PSA, which apportioned responsibility for contribution to college expenses "based upon their respective abilities to pay, taking into consideration the parties['] income and assets from all sources."

The trial court considered the three-year delay in filing the 2018 motion. The fact that a parent seeks contribution only after a child graduated from college is "significant and tip[s] the scale in favor of denial of [defendant's] request for contribution." Gac, 186 N.J. at 535. As explained by the Court:

> Obviously, the factors set forth in [Newburgh v. Arrigo, 88 N.J. 529 (1982)] and reaffirmed today contemplate that a parent or child seeking contribution towards the expenses of higher education will make the request before the educational expenses are incurred. As soon as practical, the parent or child should communicate with the other parent concerning the many issues inherent in selecting a college. At a minimum, a parent or child seeking contribution should initiate the application to the court before the expenses are incurred. The failure to do so will weigh heavily against the grant of a future application.
>
> [Id. 546-47 (footnote omitted).]

Thus, the trial court properly considered the three-year delay in filing the application without undertaking a laches or waiver analysis.

Lastly, each party argues the trial court erred by denying their respective request for counsel fees. Their arguments are without sufficient merit to warrant extended discussion in a written opinion. R. 2:11-3(e)(1)(E). The counsel fee applications were denied without prejudice. Defendant's motion was denied in its entirety. See R. 5:3-5(c)(7) (the court should consider "the results obtained"). The trial court's finding that plaintiff did not have any ability to contribute to defendant's counsel fees is supported by the record. See R. 5:3-5(c)(1) (the court should consider "the financial circumstances of the parties"); R. 5:3-5(c)(2) (the court should consider "the ability of the parties . . . to contribute to the fees of the other party"). Its finding that defendant's motion was not filed in bad faith is also supported by the record. See R. 5:3-5(c)(3) (the court should consider "the reasonableness and good faith of the positions advanced by the parties"). Accordingly, we discern no abuse of discretion.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1725-18T2