289 N.J. Super. 352 (1996)
674 A.2d 174
JAMES MOSS, PLAINTIFF-RESPONDENT,
v.
ANNE C. NEDAS, (FORMERLY MOSS) DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Submitted December 4, 1995.
Decided February 20, 1996.
*353 Before Judges P.G. LEVY and EICHEN.
Mills & Mills, attorneys for appellant (John M. Mills, III, on the brief).
William J. Courtney, attorney for respondent (Mr. Courtney, on the brief; Elizabeth B. Moshier, also on the brief).
PER CURIAM.
This is an appeal from a post-judgment order entered in the Family Part on January 20, 1995, following plaintiff's motion to enforce litigant's rights. The order terminated plaintiff's obligation to further contribute to the costs of his daughter Leigh's college tuition. We affirm.
*354 The parties were divorced on June 9, 1980. A property settlement agreement providing for the parties to share college education costs "in proportion to their ability to contribute" was incorporated into the judgment. Leigh, now age twenty-one and visually impaired, was five years old at the time of the divorce.
We review the more recent events leading to this appeal. On May 16, 1994, following a plenary hearing, the Family Part judge, who entered the instant order, issued a lengthy detailed written opinion concluding that plaintiff was obligated to pay $12,000 toward the $27,000 annual cost of Leigh's education at Sarah Lawrence College. The judge noted that "[i]n comparison, Rutgers University costs about $9,000 per year." Plaintiff had not objected to paying his fair share of Leigh's college education but questioned the necessity for her attendance at Sarah Lawrence College because of the expense.
At the time of the hearing, Leigh had already completed one semester at Sarah Lawrence College and the court was reluctant to require her to change schools in view of her disability and apparent success there. Notably, the court heard testimony from Leigh herself. The judge observed "[t]he benefits of Sarah Lawrence to Leigh are its small size; location ...; faculty/student ratio; small class size and individualized course of study; and housing alternatives." She found that Leigh is "committed to her college education, ... has shown remarkable independence in her educational goals, ... [and] has been successful in her courses at Sarah Lawrence."
The court reviewed both plaintiff's and defendant's financial circumstances, as well as Leigh's financial social security disability payments, the fact that she has the "ability to work during the summer," and that "financial aid is available, through grants, scholarships or loans." Observing that plaintiff's and defendant's gross incomes were essentially the same in 1993, $59,000 for plaintiff and $57,000 for defendant, at least prior to her taking a voluntary leave from her job and moving to Florida with her husband, the Family Part judge directed plaintiff to pay $12,000 *355 toward the $27,000 tuition and other related costs at Sarah Lawrence. Accordingly, on June 20, 1994, the judge entered an order requiring plaintiff to pay "$6,000 ... twice a year directly to Sarah Lawrence College, on a timely semester basis."
In the written decision, the judge also noted that "Leigh's relationship to her father appears one of affection, care, shared goals as to her education, and responsiveness to one another, although it is not a close and intense relationship. Leigh had lived with her father for about six years after the divorce."
Thus, in determining the amount of the contribution, the Family Part judge considered the factors enumerated in Newburgh v. Arrigo, 88 N.J. 529, 443 A.2d 1031 (1982), noting "the financial [factors were] determinative," but also acknowledging the relational factor under Newburgh. In this context, the judge also observed:
[Plaintiff] had made it clear ... that it was too expensive and that he could not afford that type of educational expense. He was not consulted any further even when Leigh was actually accepted. (emphasis added)
In the fall, plaintiff was surprised to learn that Leigh had applied to and received approval of a transfer of her credits to Skidmore College. He also learned that the application had actually been filed prior to the May 12, 1994 hearing and that Leigh had been accepted to Skidmore prior to the court's June 20, 1994 order. Thus, neither the court nor plaintiff had been told of these changed circumstances despite their existence at the time of the hearing. When plaintiff did not pay the tuition to Skidmore, defendant filed a motion to enforce litigant's rights. Plaintiff responded by cross-motion seeking a new plenary hearing to redetermine the apportionment of the college education costs between the parties.
On September 6, 1994, the Family Part judge denied plaintiff's motion to enforce litigant's rights and granted plaintiff a modification in the amount of college expenses he would be obligated to pay for the school year 1994-95 at Skidmore. The judge issued a written letter decision explaining her reasons for the modification. *356 We reproduce the decision here essentially in its entirety. This time the judge emphasized the relational factors in determining to reduce plaintiff's proportional share of college expenses.
These motions are necessitated by the undisputed facts that months prior to the plenary hearing which focused upon [plaintiff's] obligation to contribute to the expenses of Sarah Lawrence College, Leigh had filed applications to other colleges for transfer; that as of the date of the plenary hearing, she was still considering a transfer out of Sarah Lawrence; that she was accepted as a transfer student to Skidmore College; that she actually accepted the transfer prior to the entry of the June 20, 1994 order; that neither Leigh nor [defendant] ever advised [plaintiff] of this process, and only when he was asked to contribute directly to [defendant] did he become aware that he would not be paying Sarah Lawrence.
Counsel for [defendant] contends that this Court's reasoning is as applicable to Skidmore as to any other college Leigh may attend, and that the $12,000 college contribution ordered must be to whatever school Leigh chooses to attend.
In response, the Court firmly disagrees. The decision was based upon a full review of all the factors in Newburgh v. Arrigo, 88 N.J. 529 [443 A.2d 1031] (1982), only half of which directly relate to the financial commitment being undertaken. The others relate to the goals of the parent/child; their relationship; the type of education in view of the special needs, interest, and commitment of the child. What is directly affected by the discovery of the change in Leigh's commitment to Sarah Lawrence is this Court's specific finding that while [plaintiff] does have the ability to pay more than his present child support amount, he would have to assist in the expense of Sarah Lawrence far more than a more reasonable costs such as Rutgers because of Leigh's special reasons to select that school. It is astounding that throughout the entire hearing, and until a demand was made to pay Skidmore in July, [plaintiff] was never advised that a different school was being considered. While [defendant's counsel] may have advised his client not to raise the issue of a transfer during the hearing, there is simply no reason to suggest it is unimportant or nondeterminative. The actions prove only one thing  that the Court was not as perceptive to the total lack of communication on the issue of Leigh's education as has now been made very clear. [Plaintiff] is viewed solely as "a wallet" in regard to his obligation for college contribution, and the prior order of the Court shall be revised.
This Court shall deny the application for an order in violation of litigant's rights and the provisions requested as to payment; the Court shall grant the application to modify the June 20, 1994 order, and orders that [plaintiff] shall contribute no more than $9,000 to Skidmore College, the school year of 1994-1995. [Plaintiff] shall not be responsible for any further college education costs after this year unless and until he is fully advised of all choices considered by Leigh, receives all transcripts and information on her performance at Skidmore, participates in the process of considering Leigh's 1995 enrollment, and has an active role in financial aid, loan, grant, scholarship applications, none of which appear to even have been considered at the time of a possible transfer.
*357 The judge concluded by cautioning defendant that meaningful communication with plaintiff concerning Leigh's education was a quid pro quo for requiring plaintiff to make future contributions to Leigh's educational expenses. The court then ordered defendant to pay plaintiff's counsel fee in the sum of $500, an amount the judge deemed "appropriate and reasonable [due to] the nature of the failure to advise him of the changes being made." In the order memorializing the decision to reduce plaintiff's obligation for tuition costs, the judge stated that plaintiff "shall not be responsible for any further college education costs after this year unless compliance with provisions of letter decision this date." On October 24, 1994, the Family Part judge denied defendant's motion for reconsideration. Defendant did not appeal from either the September 6, 1994 order or the October 24, 1994 order.
In late November, plaintiff learned for the first time that Leigh had transferred back to Sarah Lawrence College. Thereafter, plaintiff filed a motion to enforce litigant's rights seeking total elimination of his obligation to pay college expenses as the result of defendant's continued failure to include him in the decision-making process concerning Leigh's education. Plaintiff alleged that despite his apparent efforts to communicate with his daughter concerning her education, Leigh had transferred from Skidmore back to Sarah Lawrence College without any prior notice, consultation or discussion with him. He also expressed concern that defendant's failure to communicate the change in schools had deprived him of the opportunity for obtaining financial aid for Leigh.
The record reflects that the sole communication by defendant or Leigh with plaintiff concerning this change is a perfunctory letter, dated November 23, 1994, in which defendant instructed plaintiff to make his tuition payment to Sarah Lawrence and not Skidmore because "[u]nder the terms of the leave of absence that Leigh took from Sarah Lawrence College, she will return [there] ... for the second semester of her sophomore year." In addition, the letter informed plaintiff that Leigh was considering spending her junior *358 year in England at a Sarah Lawrence program at Oxford. Finally, the letter indicated Leigh's grades would be forwarded when available.
The Family Part judge found that defendant's letter to plaintiff did not constitute compliance with the court's order and decision of September 6, 1994. The court stated:
It doesn't include any of the terms of the leave of absence and inform him of what choices were considered or not or why. The letter doesn't provide any additional information about the program at Oxford. It indicates that they would send a copy of Leigh's grades. That is not the same as a transcript as required here, and it does not in any way provide information and the opportunity for "an active role by [plaintiff] in the financial issues regarding Leigh's 1995 enrollment."
* * * * * * * *
I've taken into account all of the prior decisions of the Court, my findings here. It continues to appear to me and this Court that [plaintiff] is viewed as a wallet as far as [defendant] is concerned. This is not a punishment to Leigh....
Factors have been taken into account on an ongoing basis by this Court, and I find that the provisions and the obligation will not be enforced any longer against [plaintiff] by this Court.
It's clear to me that what has happened is that the money and the requirement of this court order to pay has become the focus of his relationship with ... Leigh ...; rather than the fact that with this money obligation out of the picture, maybe now truly a relationship can develop that's on a voluntary basis. That is between Leigh and her father. And I pray that that happens, because I do believe [plaintiff] wants to contribute to his daughter's . .. education. But I find that he has been cut out of the process.
Accordingly, the Family Part judge entered an order on January 20, 1995 relieving plaintiff of "any further obligation to pay any college education costs ... [except] for costs for 1993-1994 (as per June 1994 order) and for costs for 1994-1995 (as per September 1994 order)." In addition, the judge again ordered defendant to pay counsel fees of $500 because of the "failure to advise [plaintiff] of the changes being made."
On appeal, defendant contends that the Family Part judge inappropriately applied only one of the Newburgh factors, giving it a disproportionate weight in deciding to eliminate plaintiff's further obligation to pay college education costs. Defendant contends the court relied solely on the factor relating to the nature of *359 the relationship between the payor spouse and the child. Plaintiff counters that throughout the case the Family Part judge considered the "relationship" factor as significant and did not focus exclusively on that factor but weighed all the relevant factors in reaching her decision.
We have carefully reviewed the record and conclude the judge did not abuse her discretion in eliminating plaintiff's obligation to pay college tuition under the circumstances. The parties were before the Family Part three times, and on each occasion, the court acknowledged plaintiff's desire to be included in the decision-making process concerning Leigh's college education as well as his financial concerns respecting the high cost of education at Sarah Lawrence College. Despite prior court orders and the clear requirement that defendant communicate with plaintiff concerning Leigh's educational progress and plans, plaintiff was not consulted; his opinion was not sought; and he was not given any information concerning Leigh's progress at school. Although plaintiff attempted to communicate with Leigh, neither she nor defendant reciprocated. The Family Part decision of September 6, 1994 clearly indicated that "[plaintiff] shall not be responsible for any further education costs ... unless and until he is fully advised of all choices considered by Leigh, receives all transcripts and information on her performance ..., participates in the process of considering Leigh's 1995 enrollment, and has an active role in financial aid, loan, grant, [and] scholarship applications." This provision was reiterated in the Family Part order of the same date. The language was very specific as to what was necessary to comply with the Family Part order.
Although the court will enforce an agreement to the extent it is just and equitable, when it appears no longer fair to do so, the court is not bound by the agreement or its prior orders. Lepis v. Lepis, 83 N.J. 139, 146-48, 416 A.2d 45 (1980). Thus, "if circumstances have changed in such a way that requiring defendant to pay for college would no longer be equitable and fair, the *360 court also remains free to alter the prior arrangement." Id. at 161 n. 12, 416 A.2d 45.
"We must not lose sight of the broad equitable powers of the Family Part to accomplish substantial justice," Weitzman v. Weitzman, 228 N.J. Super. 346, 358, 549 A.2d 888 (App.Div. 1988), certif. denied, 114 N.J. 505, 555 A.2d 623 (1989), which, we perceive, is what the Family Part judge strove to do in this case. In Newburgh, the Supreme Court held that "[i]n appropriate circumstances, parental responsibility includes the duty to assure children of a college ... education." Newburgh v. Arrigo, supra, 88 N.J. at 544, 443 A.2d 1031. (emphasis added) Given plaintiff's financial resources and the absence of any meaningful relationship between plaintiff and Leigh, the judge no longer considered plaintiff's obligation to share college education expenses appropriate. We are satisfied from our review of the record the judge had in mind the numerous Newburgh factors and applied them in reevaluating defendant's claim for contribution toward those costs. See id. at 545, 443 A.2d 1031. Given the subjectivity and imprecision of this multi-factor analysis, which implies substantial legal discretion in the judge in implementation, we find no abuse of discretion or legal error in eliminating plaintiff's obligation for payment of college expenses. Nor do we perceive any abuse of the Family Part's discretion in the award of counsel fees. Such obstructive conduct as is evidenced in this record militates strongly in favor of the Family Part's determination, and we find no basis for intervention.
Affirmed.