**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1417-19
A-3369-19

KAREN RASMUSSEN (n/k/a
KAREN KEANEY),

     Plaintiff-Respondent,

v.

ROBERT W. RASMUSSEN,

     Defendant-Appellant.

_____

        Argued June 2, 2021 – Decided July 13, 2021

        Before Judges Mawla and Natali.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FM-02-1134-05.

        Damiano M. Fracasso argued the cause for appellant.

        Joseph M. Freda, III argued the cause for respondent (Gomperts Penza McDermott & Von Ellen, LLC, attorneys; Joseph M. Freda, III, of counsel and on the briefs).

PER CURIAM

In these appeals, which we consider back-to-back and have consolidated for the purpose of writing a single opinion, defendant Robert Rasmussen challenges November 14, 2019 and March 16, 2020 Family Part orders that required him to reimburse plaintiff Karen Rasmussen for tuition costs and medical expenses for their children. After considering the parties' contentions in the context of the record and the applicable legal principles, we vacate the court's November 14, 2019 order to the extent it required defendant to reimburse plaintiff for his daughter's fall 2019 college expenses, and remand for further factual findings. We affirm all remaining and challenged portions of the November 14, 2019 order. We also vacate the court's March 16, 2020 order because it was entered in violation of the United States Bankruptcy Code's automatic stay provision.

I.

To provide context for our decisions, we provide an extended discussion of the procedural history and facts derived from the record. Plaintiff and defendant, after a marriage of approximately nine years, divorced on August 29, 2005, pursuant to a final judgment of divorce, which incorporated their written property settlement agreement (PSA). During the course of their marriage, the parties had a daughter and son. In the PSA, defendant acknowledged he had not

seen the children for several months and "voluntarily relinquished his parenting time rights."

Plaintiff and defendant agreed that they considered the PSA's terms "fair, reasonable[,] and satisfactory," and their "obligation to support [their c]hildren shall remain until [their] respective emancipation." Emancipation was defined as "the facts in existence at the time one of the parents allege a child to be emancipated."

The parties also agreed to "equally share" the children's medical expenses not covered by insurance and "to contribute to the college/trade school/post-secondary education expenses of the [c]hildren." The PSA did not explicitly address the parties' involvement in the children's college decision-making process.

Plaintiff subsequently moved for sole legal and residential custody of the children, which the court granted in a May 28, 2010 order. On April 27, 2011, the parties entered a consent order reducing defendant's child support obligations because he filed a Chapter 13 bankruptcy petition. See 11 U.S.C. § 301. In that order, plaintiff and defendant agreed that defendant would remain responsible for thirty percent of the children's medical expenses and that all prior orders remained "in full force and effect" unless specifically modified.

3

After the parties' daughter turned nineteen-years-old, the court issued an October 10, 2018 administrative order terminating defendant's obligations to pay child support pursuant to N.J.S.A. 2A:17-56.67(a). The following month, plaintiff filed a motion seeking, among other relief, to vacate the October 10, 2018 order because the parties' daughter was a registered full-time college student, which plaintiff supported with a letter from the registrar of their daughter's college. Plaintiff also sought to enforce defendant's obligations under the previous orders to contribute towards the health and education expenses of the children, and for counsel fees.

On February 22, 2019, the court ordered defendant "for the reasons expressed on the record,"[1] to reimburse plaintiff for thirty percent of the children's medical expenses pursuant to the April 27, 2011 consent order. In addition, the court ordered plaintiff to send defendant copies of all unreimbursed medical expenses within two weeks of her receipt.

The court also un-emancipated the parties' daughter until her twenty-third birthday and ordered, as a college student, she had an "affirmative obligation to

---

[1] We have not been provided with the court's written or oral statement of reasons supporting the February 22, 2019 order.

complete and sign a FERPA form,[2] giving [defendant] access to her grades, class schedule, . . . and financial aid information every semester that she is in college, in order to have [d]efendant . . . contribute towards her college costs." The court ordered again, "by consent," that defendant's proportionate share of his daughter's education expenses was thirty percent. In a separate March 29, 2019 order, the court denied plaintiff's request for counsel fees.

On September 10, 2019, defendant filed a motion "enforcing . . . [his] [r]ights as a [l]itigant," and seeking to vacate the court's February 22, 2019 order to the extent it obligated him to reimburse any of his daughter's college expenses. He specifically sought to determine "the amount of unreimbursed medical expenses, if any, the [p]laintiff is entitled to . . . based on [her] failure to substantially comply" with the February 22, 2019 order. Finally, he requested the court enter an order emancipating his daughter and awarding him counsel fees.

---

[2] FERPA refers to the Family Educational Rights and Privacy Act, 20 U.S.C. § 1232g, which we have noted "prohibit[s] the federal funding of educational institutions that have a policy or practice of releasing education records to unauthorized persons." L.R. v. Camden City Pub. Sch. Dist., 452 N.J. Super. 56, 75 (App. Div. 2017) (alteration in original) (quoting Gonzaga Univ. v. Doe, 536 U.S. 273, 276 (2002)).

In his supporting certification, defendant asserted neither plaintiff nor his daughter provided him with the FERPA form granting him access to her college information. He stated plaintiff "wrote to [his] wife that [their daughter] was not attending college," and questioned whether his daughter was "still enrolled in and attending college anywhere." Defendant further certified that he received a letter from plaintiff's attorney prior to filing his motion seeking payment of medical expenses. He argued however, that plaintiff failed to comply with the time requirements included in the February 22, 2019 order when she sent the outstanding and unreimbursed medical expenses.

Plaintiff opposed defendant's application and filed a cross-motion to compel defendant to pay thirty percent of the children's unreimbursed medical expenses and college costs through the fall 2019 semester, and for counsel fees. Plaintiff certified that the FERPA form "was signed and provided" to the school on March 13, 2019, a copy of which she appended, and that "[a]ll [d]efendant had to do . . . was call the school." She also stated she provided defendant with proof of all unreimbursed medical expenses on April 13, 2019, "via certified mail [and] in conformity" with the February 22, 2019 order, and requested defendant reimburse her in an August 5, 2019 letter from her attorney, which was returned to plaintiff as "[u]nclaimed."

6

Neither party requested a plenary hearing to resolve the issues raised in the motion, and agreed to have the motions heard on the papers. They also waived oral arguments.

In a reply certification filed with the court on October 8, 2019, defendant stated he contacted the registrar's office of his daughter's college and that they did not have a signed FERPA form to grant him access to his daughter's information, and he alleged the form plaintiff produced to the court was fraudulently created. He also certified that he received notice to collect an unspecified delivery at the post office, but he was unaware it contained medical bills for which plaintiff sought reimbursement.

On November 14, 2019, the court denied defendant's motion in its entirety, and concluded defendant violated the February 22, 2019 order. The court also granted in part plaintiff's cross-motion and ordered defendant to pay all outstanding and unreimbursed medical and college expenses within five days of the date of the order.

In the court's corresponding statement of reasons, it found defendant's motion "repeated arguments previously litigated and decided" and concluded "[p]laintiff provided invoices for the medical expenses and proof of mailing these invoices to [d]efendant prior to the filing date." Further, the court noted

7

defendant agreed to pay thirty percent of his daughter's college expenses by consent, as memorialized in the February 22, 2019 order. Absent a showing of duress, which defendant neither asserted nor established, the court concluded that provision of the order remained enforceable.

Regarding defendant's argument that plaintiff failed to file the FERPA form as required by the February 22, 2019 order, the court found the issue moot based on plaintiff's "evidence of compliance," and stated "[p]laintiff should be cognizant of the educational institution's policy regarding the need to file a new FERPA form every semester." It further noted defendant did not make any argument as to why his daughter should be emancipated "beyond his lack of relationship with her." Finally, the court reviewed the Rule 5:3-5(c) factors and denied both parties' request for counsel fees finding they each demonstrated good faith in making their motions.

The following day, defendant's counsel sent the court a letter asking whether it: 1) considered defendant's cross-motion and reply, 2) would stay its order requiring defendant to reimburse the children's expenses within five days, and 3) intended to file "a statement or opinion pursuant to [Rule] 2:5-1." The court did not respond to defendant's counsel's communication.

On January 14, 2020, plaintiff filed a motion to enforce the terms of the November 14, 2019 order. She also requested additional unreimbursed medical costs, contribution with regard to their daughter's spring 2020 semester college expenses, and for the court to impose "coercive measures to secure [defendant's] compliance" with the November 14, 2019 order. Plaintiff sought sanctions for every day defendant failed to make the required payments, the accrual of post-judgment interest, and counsel fees.

On January 20, 2020, defendant filed a second Chapter 13 bankruptcy petition. The parties disputed the applicability of the automatic stay provision of the United States Bankruptcy Code, 11 U.S.C. § 362(a), to plaintiff's January 14, 2020 motion. Defendant also noted that the bankruptcy court had not approved his lawyer, Damiano Marcello Fracasso, as special counsel for the state court proceedings, and therefore, his counsel of choice was unable to "formally participate in [the] proceeding."[3]

On March 16, 2020, the court entered an order requiring defendant to pay plaintiff $18,664.21, representing the disputed and unreimbursed medical and

---

[3] On March 18, 2020, defendant applied to the bankruptcy court for permission to retain Fracasso as counsel for "post-judgment enforcement actions pending in the Superior Court of New Jersey," which the bankruptcy court approved on March 27, 2020.

college expenses, including those related to their daughter's spring 2020 semester, and concluded that defendant was in violation of the November 14, 2019 order. Specifically, the court found that defendant was obligated to pay $1,278.98 in medical expenses and $13,004 in college tuition related to the November 14, 2019 order, along with an additional $179.97 in medical expenses and $4,201.26 for their daughter's spring 2020 term. The court also denied plaintiff's request for sanctions, coercive incarceration, post-judgment interest, and counsel fees.

In the court's accompanying written statement of reasons, it noted defendant failed to raise his "jurisdictional and substantive objections in a formal opposition," and the court therefore proceeded as if the motion was unopposed. The court concluded that defendant was in direct violation of its November 14, 2019 order obligating him to pay plaintiff the unreimbursed medical expenses and his proportionate thirty percent share of the parties' daughter's college expenses. The court also determined that plaintiff provided competent proofs regarding the unreimbursed medical expenses from October 1, 2019 through December 30, 2019, in addition to the expenses related to their daughter's spring 2020 semester colleges costs. These appeals followed.

II.

Our review of Family Part orders is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "We review the Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282-83 (2016) (quoting Cesare, 154 N.J. at 413).

We uphold Family Part findings if those findings are supported by "adequate, substantial, credible evidence." N.J. Div. of Child Prot. & Permanency v. S.K., 456 N.J. Super. 245, 261 (App. Div. 2018) (quoting Cesare, 154 N.J. at 411-12). Likewise, an order granting a motion to enforce litigant's rights is reviewed under an abuse of discretion standard. N. Jersey Media Grp., Inc. v. State, Off. of Governor, 451 N.J. Super. 282, 296, 299 (App. Div. 2017). We do not, however, owe any deference to the Family Part's "interpretation of the law." Thieme, 227 N.J. at 283 (quoting D.W. v. R.W., 212 N.J. 232, 245 (2012)).

We may also exercise more extensive review of trial court findings that do not involve a testimonial hearing or the opportunity to assess witness credibility. See N.J. Div. of Youth & Fam. Servs. v. G.M., 198 N.J. 382, 396 (2009) (stating that we "need not afford deference" to Family Part conclusions when "no hearing takes place, no evidence is admitted, and no findings of fact

11

are made"). Nevertheless, "[r]eversal is reserved only for those circumstances when we determine the factual findings and legal conclusions of the trial judge went 'so wide of the mark that a mistake must have been made.'" Llewelyn v. Shewchuk, 440 N.J. Super. 207, 214 (App. Div. 2015) (quoting N.J. Div. of Youth & Fam. Servs. v. M.M., 189 N.J. 261, 279 (2007)).

III.

In A-1417-19, defendant challenges the November 14, 2019 order denying his motion for post-judgment relief and requiring him to pay thirty percent of his children's unreimbursed medical and college expenses pursuant to the February 22, 2019 order. Defendant argues the court erred by: 1) depriving him of due process; 2) incorrectly refusing to vacate or amend the February 22, 2019 order; 3) misapplying the law on emancipation; 4) failing to order a plenary hearing, particularly on the issue of whether plaintiff provided a FERPA form for the fall 2019 semester; 5) requiring him to reimburse his children's medical expenses despite plaintiff's alleged violation of the February 22, 2019 order; and 6) ordering him to reimburse his daughter's college expenses.[4]

---

[4] Defendant also argued the court did not possess authority in its November 14, 2019 order to compel him to comply with the court's mandate within five days, but concedes the issue is moot in light of his Chapter 13 bankruptcy petition, and the subsequent entry of a payment plan. We therefore decline to address the

We agree the court erred in concluding that based on the motion record, a FERPA form was provided for the fall 2019 semester, but otherwise disagree with defendant's remaining contentions. Accordingly, we vacate a portion of the November 14, 2019 order and remand for the limited purpose for the court to determine if the fall 2019 FERPA form was provided and, if not, whether that failure relieves defendant's obligation to reimburse plaintiff for college expenses related to the fall 2019 semester.

"When faced with evidence of disputed material facts, a judge must permit a plenary hearing in order to reach a resolution." Milne v. Goldenberg, 428 N.J. Super. 184, 201 (App. Div. 2012) (quoting Tretola v. Tretola, 389 N.J. Super. 15, 20 (App. Div. 2006)). "When the evidence discloses genuine material issues of fact, the failure to conduct a plenary hearing to resolve those issues requires us to reverse and remand for such a hearing." K.A.F. v. D.L.M., 437 N.J. Super. 123, 138 (App. Div. 2014). However, "where . . . affidavits do not show the existence of a genuine issue of material fact, the trial judge . . . may decide the motion without a plenary hearing." Shaw v. Shaw, 138 N.J. Super. 436, 440 (App. Div. 1976); see also Quinn v. Quinn, 225 N.J. 34, 45 (2016).

merits of this argument, but note the court has broad equitable powers to enforce child support obligations under Rule 5:3-7(b).

"Conclusory allegations [should] . . . be disregarded.  Only statements to which a party could testify should be considered."  Lepis v. Lepis, 83 N.J. 139, 159 (1980); see also Pressler & Verniero, Current N.J. Court Rules, cmt. on R. 1:6-6 (2021) ("Personal knowledge . . . clearly excludes facts based merely on 'information and belief.'").

A. Due Process

Defendant argues the court failed to consider his opposition and reply papers before issuing its November 14, 2019 order, which deprived him of due process.  We disagree.

The United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1; see also N.J. Const. art. 1, ¶ 1.  "In examining a procedural due process claim, we first assess whether a liberty or property interest has been interfered with by the State, and second, whether the procedures attendant upon that deprivation are constitutionally sufficient."  Doe v. Poritz, 142 N.J. 1, 99 (1995) (citation omitted).

Here, defendant's reply certification was received by the court on October 8, 2019, as indicated by its time stamp, and the court specified in its November 14, 2019 order that it "read the papers presented by the parties."  Further, we are

satisfied from an independent review of the record that the court conscientiously and thoroughly considered all of the parties' arguments. As such, we find no violations of defendant's due process rights based on the court's alleged failure to consider his opposition and reply papers, or on any other basis.

B.  Failure to Vacate

We also disagree with defendant that the court incorrectly refused to vacate or amend the February 22, 2019 order. Specifically, he contends the court erred in requiring him to show duress instead of considering the standards and bases for vacating or amending final judgments as set forth under Rule 4:50-1.

Motions to reopen or set aside a judgment are governed by Rule 4:50-1, which provides:

> [T]he court may relieve a party or the party's legal representative from a final judgment or order for the following reasons: (a) mistake, inadvertence, surprise, or excusable neglect; (b) newly discovered evidence which would probably alter the judgment or order and which by due diligence could not have been discovered in time to move for a new trial under [Rule] 4:49; (c) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (d) the judgment or order is void; (e) the judgment or order has been satisfied, released or discharged, or a prior judgment or order upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that the judgment or order should have prospective application; or (f) any other reason

justifying relief from the operation of the judgment or order.

"As a general matter, judgments and orders in family actions are covered by this rule." Pressler & Verniero, Current N.J. Court Rules, cmt. 6.1 on R. 4:50-1 (2021). "Regardless of the basis, vacation of a judgment under Rule 4:50-1 should be granted sparingly." In re Guardianship of J.N.H., 172 N.J. 440, 473-74 (2002).

As best we can discern, defendant contends the court should have vacated the February 22, 2019 order, and in failing to do so erroneously relied exclusively on the lack of "duress," as a basis for refusing to set aside that order. Defendant's claims are without merit. First, defendant has not identified affirmatively either in the trial court or before us which provision of Rule 4:50-1 he relies upon in support of his position that the February 22, 2019 order should be vacated. Second, defendant failed to establish his right to relief under any provision of Rule 4:50-1. He has not shown the order was entered by mistake, should be vacated due to newly discovered evidence, or that the parties' misconduct warranted relief under Rule 4:50-1. Nor do any of the reasons expressed in subsections (d), (e), or (f) apply. We therefore conclude the court did not abuse its discretion in denying defendant's motion to vacate or amend

16

the February 22, 2019 order.  See U.S. Bank Nat'l Ass'n v. Guillaume, 209 N.J. 449, 467 (2012).

C. Emancipation

Defendant next argues that the court erred in refusing to emancipate his daughter.  Specifically, he contends the court misapplied the law on emancipation and erred in failing to grant him a plenary hearing.

Emancipation is a legal concept, imposed when "the fundamental dependent relationship between parent and child" ends.  See Dolce v. Dolce, 383 N.J. Super. 11, 17 (App. Div. 2006).  "It is not automatic and 'need not occur at any particular age . . . .'"  Llewelyn, 440 N.J. Super. at 216 (quoting Newburgh v. Arrigo, 88 N.J. 529, 543 (1982)).  "When the circumstances surrounding the parent-child relationship support a finding the child is emancipated, 'the parent relinquishes the right to custody and is relieved of the burden of support, and the child is no longer entitled to support.'"  Ibid. (quoting Filippone v. Lee, 304 N.J. Super. 301, 308 (App. Div. 1997)).

However, the law "provides that once a child reaches the age of majority, now eighteen, N.J.S.A. 9:17B-3, a parent has established 'prima facie, but not conclusive, proof of emancipation.'"  Ibid. (quoting Johnson v. Bradbury, 233 N.J. Super. 129, 136 (App. Div. 1989)).  Once established, "the burden of proof

to rebut the statutory presumption of emancipation shifts to the party or child seeking to continue the support obligation." Ibid. The presumption "may be overcome by evidence that a dependent relationship with the parents continues because of the needs of the child." Ibid. A child's attendance in postsecondary education is one basis to delay emancipation and continue support. See Patetta v. Patetta, 358 N.J. Super. 90, 93-94 (App. Div. 2003); Keegan v. Keegan, 326 N.J. Super. 289, 295 (App. Div. 1999).

The issue of whether a child is emancipated demands a fact-sensitive analysis. Newburgh, 88 N.J. at 543. "[T]he essential inquiry is whether the child has moved beyond the sphere of influence and responsibility exercised by a parent and obtains an independent status of his or her own." Llewelyn, 440 N.J. Super. at 216 (alteration in original) (quoting Filippone, 304 N.J. Super. at 308). The "emancipation 'determination involves a critical evaluation of the prevailing circumstances including the child's need, interests, and independent resources, the family's reasonable expectations, and the parties' financial ability, among other things.'" Ibid. (quoting Dolce, 383 N.J. Super. at 18); see also N.J.S.A. 2A:17-56.67; R. 5:6-9.

Issues of emancipation typically require a plenary hearing, especially "when the submissions show there is a genuine and substantial factual dispute"

that the trial court must resolve. Hand v. Hand, 391 N.J. Super. 102, 105 (App. Div. 2007). Nevertheless, "[a]s is particularly the case in matters that arise in the Family Part, a plenary hearing is only required if there is a genuine, material and legitimate factual dispute." Llewelyn, 440 N.J. Super. at 217 (alteration in original) (quoting Segal v. Lynch, 211 N.J. 230, 264-65 (2012)).

Here, the issue of whether the parties' daughter should be emancipated was first decided in the court's February 22, 2019 order. By the time the court reached that decision, the parties' daughter already completed a semester of college and the court concluded emancipation was not supported. As indicated by the court in its November 14, 2019 order, defendant's motion for post-judgment relief "repeated arguments previously litigated and decided." We are satisfied defendant has failed to establish a "genuine, material and legitimate factual dispute," Llewelyn, 440 N.J. Super. at 217, as to whether the parties' daughter was outside her parent's sphere of influence, and find no basis to disturb the court's decision denying defendant's request without a plenary hearing.

D. Medical Expenses

Defendant next contends that he should be relieved of his obligation to reimburse plaintiff for the children's medical expenses. Specifically, defendant

19                                                                    A-1417-19

maintains plaintiff's failure to provide him with receipts of medical expenses exactly within two weeks of her receiving them, contrary to the February 22, 2019 order, discharged his obligation to reimburse these expenses. Again, we disagree.

Unlike defendant's obligation to pay for his daughter's college expenses, his obligation to pay his children's medical expenses, which he agreed to in the PSA and April 27, 2011 consent order, could only be extinguished upon emancipation. Under the circumstances before us, plaintiff's failure to provide defendant with copies of the disputed medical expenses within two weeks of receipt as required by the February 22, 2019 order, did not relieve him of his obligation to reimburse those expenses, it merely delayed plaintiff's right to receive payment for these expenses. In the future, however, plaintiff shall timely provide any unreimbursed medical expenses to defendant consistent with the February 22, 2019 order. We find that the court's enforcement of defendant's obligations, after he had more than two weeks' notice of the disputed expenses to be "fair and equitable," Dolce, 383 N.J. Super. at 18, and the court's decision to rely on equitable principles to deny defendant relief supported by "adequate, substantial, credible evidence." S.K., 456 N.J. Super. at 261 (citation omitted).

E. College Expenses

20

We also disagree with defendant's argument that he should be relieved of his obligation to pay his thirty percent share of his daughter's college expenses. Specifically, defendant contends the Newburgh factors, 88 N.J. at 543-45, and principles expressed in Gac v. Gac, 186 N.J. 535, 545-46 (2006), and Moss v. Nedas, 289 N.J. Super. 352, 359-60 (App. Div. 1996), support his position because he does not have a relationship with his daughter, and she "only perceives [him] as an open check book." We agree, however, that there was a genuine dispute as to whether a FERPA form was filed with the school for the fall 2019 semester, which may affect his obligation under the February 22, 2019 order to reimburse his daughter's college expenses for that semester.

In determining whether a separated or divorced parent is obligated to contribute to a child's college expenses, the Supreme Court set forth a dozen factors in Newburgh, 88 N.J. at 545, which the Legislature then essentially adopted in an amendment to the child support statute. Gac, 186 N.J. at 543; see N.J.S.A. 2A:34-23(a). Those factors are:

> (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the

requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child.

[Newburgh, 88 N.J. at 545.]

In Gac, the Court applied these factors and held a father was not obligated to pay for his daughter's college expenses, in part because: the daughter had no relationship with the father and repeatedly, over several years, rejected his efforts to reestablish a relationship; the father, who received a modest income, was not kept abreast of his daughter's plans as they were being made, including her decision to attend an expensive private college instead of a less-expensive state college; and the daughter did not request assistance with paying for her college expenses until after she had graduated from college and was saddled with loans. 186 N.J. at 545-46. Notably, the parties in Gac did not contemplate the father reimbursing the daughter's college expenses before those expenses were incurred. Ibid.

Notwithstanding emancipation, "a parent can bind himself or herself by consensual agreement, voluntarily and knowingly negotiated, to support a child" beyond the presumptive age of emancipation, which is "enforceable if fair and equitable." Dolce, 383 N.J. Super. at 18. When parents have created an enforceable agreement as to child support, "the parental obligation is not measured by legal duties otherwise imposed, but rather founded upon contractual and equitable principles." Ibid. (citation omitted); see also Jennings v. Reed, 381 N.J. Super. 217, 227 (App. Div. 2005) (noting duress, deception, fraud, undue pressure, unseemly conduct, incapacity, or incompetence may be grounds to vacate a settlement agreement).

"If circumstances have changed in such a way that [the support provision] would no longer be equitable and fair, the court also remains free to alter the prior arrangement." Lepis, 83 N.J. at 161 n.12 (citations omitted). In such circumstances, application of the Newburgh factors may be appropriate despite the presence of an agreement to fund college expenses. See Moss, 289 N.J. Super. at 359-60. However, "where parties to a divorce have reached an agreement regarding children attending college . . . and no showing has been made that the agreement should be vacated or modified, the Family Part need not apply all twelve factors pertinent to college expenses as identified in

Newburgh . . . ."  Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 591 (App. Div. 2016).

In Moss, 289 N.J. Super. at 354, 356, the trial court initially required a father to pay a share of a daughter's college tuition in accordance with the parent's settlement agreement.  After the daughter transferred to a different college without notifying the father, the court reduced his obligation for that school year and ordered that he would not be responsible for any further contribution "unless and until he is fully advised of all choices considered" by the daughter.  Ibid.  Despite the "clear requirement that [the mother] communicate with [the father] concerning [the daughter]'s educational progress and plans," the daughter transferred schools again without notice to the father, and the court terminated his obligation because of the complete lack of communication.  Id. at 359-60.  We affirmed finding no abuse of discretion and noted prior arrangements can be set aside when a change in circumstances no longer makes them fair and equitable.  Ibid.

Here, defendant and plaintiff unequivocally agreed in their PSA "to contribute to the . . . post-secondary education expenses of the [c]hildren." Defendant further agreed as memorialized in the February 22, 2019 order that his proportion of the daughter's college expenses would be thirty percent.  As

such, defendant's obligations are "not measured by legal duties otherwise imposed," Dolce, 383 N.J. Super. at 18, but by his contractual agreement.

Defendant's argument that he does not have a relationship with his daughter and that she perceives him as an "open check book" does not support extinguishing his obligations to contribute to his daughter's college expenses. As noted, defendant "voluntarily relinquished his parenting time rights" in the PSA and nonetheless agreed that contributing to his daughter's education was "fair, reasonable[,] and satisfactory." Defendant never asserted that he developed any relationship with his daughter between that time and the February 22, 2019 consent order. Even when defendant agreed to contribute thirty percent towards his daughter's education, she already completed her first semester without defendant's decision-making input.

Further, defendant has not shown, based on the record before us, that his obligation to reimburse the college expenses of the parties' daughter should be extinguished based on the Newburgh factors, 88 N.J. at 543-45, or the principles expressed in Gac, N.J. at 545-46, and Moss, 289 N.J. Super. at 359-60. Defendant failed to specifically address the Newburgh factors, and, unlike Moss, defendant does not indicate he was expected to be involved in his daughter's college decision-making process. Nor does defendant cite evidence of his

attempts to establish a relationship with his daughter or his lack of knowledge about the college expenses until she graduated college, such as in Gac.

However, the court erred in granting plaintiff's motion requiring defendant to reimburse his daughter's fall 2019 college expenses because there was a genuine dispute as to whether a FERPA form was filed with the school as required by the February 22, 2019 order. Plaintiff only certified that a FERPA form was provided for the spring 2019 semester and that "[a]ll [d]efendant had to do . . . was call the school." Defendant's reply certification stated he contacted the school and was unable to access his daughter's information for the fall 2019 semester. Thus, a genuine dispute exists as to whether a FERPA form was actually submitted for the fall 2019 semester.

Without any findings to support the court's conclusion that a FERPA form was provided for the fall 2019 semester as required by the February 22, 2019 order, we "need not afford deference" to the court's conclusion. G.M., 198 N.J. at 396. Based on these circumstances, we are compelled to vacate the November 14, 2019 order to the extent it concluded a FERPA form for the fall 2019 semester was provided and remand on this limited issue for further findings of facts. We offer no opinion as to whether the failure to provide a FERPA form

for the fall 2019 semester, if true, alters defendant's obligation under equitable principles to contribute to his daughter's education expenses for that semester.

IV.

In A-3369-19, defendant argues the March 16, 2020 order awarding plaintiff medical and college reimbursement costs was entered contrary to the United States Bankruptcy Code automatic stay provision. See 11 U.S.C. § 362. Under that provision, defendant argues that once he filed his petition, the court was prohibited from ordering him to pay an award from the property of the bankruptcy estate.

Defendant also contends that to the extent plaintiff argues the March 16, 2020 order "modified" an earlier order, the court lacked subject matter jurisdiction to address such a claim under Rule 2:9-1. He also contends the court committed reversible error by denying defendant the opportunity "to apply to the . . . [b]ankruptcy [c]ourt for the appointment of court approved special counsel."

We agree the March 16, 2020 order was entered in violation of the automatic stay provision and vacate it. Our opinion is expressly limited to the March 16, 2020 order under review.

New Jersey courts have concurrent jurisdiction with federal bankruptcy courts to address the applicability of the automatic stay. Citizens First Nat. Bank v. Marcus, 253 N.J. Super. 1, 6 (App. Div. 1991) (citing In re Bona, 124 B.R. 11, 15 (Bankr. S.D.N.Y. 1991)); see also Minelli v. Harrah's Resort Atl. City, 463 N.J. Super. 539, 546-47 (App. Div. 2020) ("[A] state trial court must decide its own jurisdiction to hear the case before it, including, specifically, whether that case is stayed by operation of Section 362.").

In addition, "[a]ctions taken in violation of the [automatic] stay are void." In re Myers, 491 F.3d 120, 127 (3rd Cir. 2007). "A state court judgment entered while the automatic stay is in place renders that judgment void ab initio," or a nullity from the beginning. Bascom Corp. v. Chase Manhattan Bank, 363 N.J. Super. 334, 341 (App. Div. 2003); see also Clark v. Pomponio, 397 N.J. Super. 630, 634 (App. Div. 2008). This results because sole jurisdiction regarding collection of a pre-petition claim rests with the bankruptcy court, stripping the state court of all authority on the subject matter. In re Siciliano, 13 F.3d 748, 750 (3d Cir. 1994). The bankruptcy court, however, may "cure acts that are otherwise void under the automatic stay" pursuant to 11 U.S.C. § 362(d). In re Askew, 312 B.R. 274, 281 (Bankr. D. N.J. 2004) (citing In re Siciliano, 13 F.3d at 751). The bankruptcy court retains authority to issue retroactive annulment of the stay. In re Myers, 491 F.3d at 127.

Section 362(a) provides:

> Except as provided in subsection (b) of this section, a petition filed under . . . [11 U.S.C. § 301, 302, or 303], or an application filed under . . . [15 U.S.C. § 78eee(a)(3)], operates as a stay, applicable to all entities, of—
>
> (1) the commencement or continuation, including the issuance or employment of process, of a judicial, administrative, or other action or proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title; [and]
>
> (2) the enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case under this title . . . .

"The stay that comes into effect upon filing a bankruptcy petition has been described as 'an instrument of sweeping breadth and tremendous power.'" Clark, 397 N.J. Super. at 637 (quoting Henry J. Sommer et al., Collier Family Law and the Bankruptcy Code ¶ 5.03 (Alan N. Resnick & Henry J. Sommer eds., 2007)). Further, "the stay is automatic, in that it immediately goes into effect once the bankruptcy petition is filed." Id. at 638. The stay "permits the bankruptcy court to maintain control over virtually all aspects of the debtor's financial affairs in a single proceeding, with other parties or courts permitted to interfere only as the bankruptcy

court allows."  Henry J. Sommer & Margaret Dee McGarity, <u>Collier Family Law and the Bankruptcy Code</u> ¶ 5.03 (Matthew Bender ed., 2021).

The automatic stay, however, "does not operate as a stay . . . of the commencement or continuation of a civil action or proceeding . . . for the <u>establishment or modification</u> of an order for domestic support obligations . . . ."  11 U.S.C. § 362(b)(2)(A)(ii) (emphasis added).  The automatic stay also does not apply to the "collection of a domestic support obligation from property that is not property of the estate" or "with respect to the withholding of income that is property of the estate or property of the debtor for payment of a domestic support obligation under a judicial or administrative order or a statute."  11 U.S.C. § 362(b)(2)(B), (C).

The bankruptcy code defines a domestic support obligation as "a debt that accrues before, on, or after the date of the order for relief in a case under this title, including interest that accrues on that debt as provided under applicable nonbankruptcy law notwithstanding any other provision of this title . . . ."  11 U.S.C. § 101(14A).  Further, the debt must be "owed to or recoverable by . . . a spouse, former spouse, or child of the debtor or such child's parent, legal guardian, or responsible relative" and "in the nature of alimony, maintenance, or support . . . of such spouse, former spouse, or child of the debtor or such child's parent, without

regard to whether such debt is expressly so designated . . . ."  11 U.S.C. §

101(14A)(A)(i), (B).

Federal courts have held that a court order obligating a parent to pay college

expenses should be treated as a domestic support obligation under federal law.  In re

Schmacher, 495 B.R. 735, 744 (Bankr. W.D. Tex. 2013); In re Maiorino, 435 B.R.

806, 808 (Bankr. D. Mass. 2010); Soffel v. Shar, 299 B.R. 107, 112-14 (Bankr. W.D.

Pa. 2003).  Likewise, federal courts have indicated that medical expenses are a

domestic support obligation.  See In re Hutchens, 480 B.R. 374, 388 (Bankr. M.D.

Fla. 2012).

In In re Miller, 501 B.R. 266, 279 (Bankr. E.D. Pa. 2013), the court reviewed

whether "a particular ongoing state court proceeding involving the collection of

money or property from the debtor is excepted from the automatic stay" under

section 362(b)(2)(A) and (B).  First, the court must determine whether the debt [is]

a domestic support obligation.  Ibid.  Second, if the debt is a domestic support

obligation, the question is whether "the moving party is seeking an order in state

court that merely establishes or modifies the [domestic support obligation.]"  Ibid.

Third, if "the moving party is seeking more than a state court order establishing or

modifying the [domestic support obligation]—i.e., an order enforcing the payment

of a [domestic support obligation]—is the party seeking payment from sources other

than property of the bankruptcy estate?" Ibid. If "the answer to the first question is 'yes' and the second question is 'no,' the answer to the third question must be 'yes.'" Ibid. In that event, the moving party would be allowed to proceed in state court under 11 U.S.C. § 362(b)(2)(C) "[o]therwise, the exception to the automatic stay is inapplicable." Ibid.

Exceptions under subparagraph (C), however, apply to wage garnishment orders. In re DeSouza, 493 B.R. 669, 673 (BAP 1st Cir. 2013). Indeed, "the collection of a domestic support obligation from property of a debtor's estate only may be accomplished through a wage garnishment order; otherwise, it violates the automatic stay." In re Dougherty-Kelsay, 601 B.R. 426, 443 (Bankr. E. Ky. 2019).

11 U.S.C. § 541(a) defines property of the bankruptcy estate as "all legal or equitable interests of the debtor in property as of the commencement of the case." The bankruptcy courts have "emphasized that section 541(a) was intended to sweep broadly to include all kinds of property, including tangible or intangible property, [and] causes of action[.]" In re Majestic Star Casino, 716 F.3d 736, 750 (3d Cir. 2013) (alteration in original) (citation omitted). Further, in a Chapter 13 bankruptcy, property of the estate includes "all property of the kind specified in [section 541] that the debtor acquires after the commencement of the case but before the case is closed . . . and . . . earnings from services performed by the debtor after the

commencement of the case but before the case is closed . . . ."  11 U.S.C. § 1306(a)(1)-(2).

Here, the parties do not dispute that the award in the March 16, 2020 order is a domestic support obligation.  Indeed, both parties' arguments are premised on that classification.  Further, applicable case law and the plain language of 11 U.S.C. § 101(14A)(A)(i), (B), supports the finding that the children's medical and college expenses are a domestic support obligation.  Plaintiff was owed a debt, enforceable by her, for support in the form of college and medical expenses for the parties' children.  Therefore, the issue is whether plaintiff's motion sought an order which modified or established a domestic support obligation and if not, whether plaintiff sought "payment from sources other than property of the bankruptcy estate[.]" In re Miller, 501 B.R. at 279.

Plaintiff's January 14, 2020 motion clearly seeks enforcement of the November 14, 2019 order which established a domestic support obligation.  The motion specifically stated that defendant violated the November 14, 2019 order by failing to reimburse plaintiff the medical and college expenses.  Further, the motion requested an order compelling defendant to "reimburse" plaintiff for college and medical expenses that defendant already agreed to contribute to as memorialized in the February 22, 2019 order, including for the spring 2020 college semester.

Plaintiff did not request a modification of a previous domestic support obligation or the establishment of a new obligation, she moved to collect payment. Indeed, in plaintiff's merits brief, and as informed during oral arguments before us, she specifically stated that her motion "sought reimbursement by [d]efendant of his share of the children's unreimbursed medical expenses" and "their daughter's college costs" in addition to "enforcement mechanisms to ensure [d]efendant's compliance." Although we acknowledge that the November 14, 2019 order did not quantify the spring 2020 costs and additional medical expenses, plaintiff did not seek an order to merely establish these obligations. In re Miller, 501 B.R. at 279. As noted, plaintiff moved to collect payment and sought "coercive measures to secure" compliance from defendant in her January 14, 2020 motion.

Further, plaintiff did not contend she sought payment from property that was not part of the bankruptcy estate, nor did the court indicate whether the payments were to come from a source other than the bankruptcy estate. The court simply ordered defendant to pay plaintiff within thirty days from entry of the March 16, 2020 order. Finally, plaintiff did not seek, nor did the court enter an order imposing a wage garnishment to recover these funds. On such a record, we conclude the March 16, 2020 order was entered in violation of the automatic stay and is, therefore, void.

In light of our decision that the March 16, 2020 order was entered in violation of the automatic stay, we need not address defendant's remaining arguments in A-3369-19 that the court lacked subject matter jurisdiction under <u>Rule</u> 2:9-1 and committed reversible error by denying him the opportunity to obtain court approved counsel, and do not express an opinion as to the merits of these contentions. To the extent we have not specifically addressed or referenced any of defendant's remaining arguments, it is because we have concluded they are without sufficient merit to warrant discussion in this opinion. <u>R.</u> 2:11-3(e)(1)(E).

Affirmed in part, vacated in part, and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1417-19