**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3874-19

CHERYL VAN SCIVER,

      Plaintiff-Appellant,

v.

SHAWN J. BETTEN,

      Defendant-Respondent.

_____

      Submitted September 13, 2021 – Decided October 4, 2021

      Before Judges Sabatino and Rothstadt.

      On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Camden County, Docket No. FM-04-1514-16.

      Adinolfi, Lieberman, Burick, Falkenstein, Roberto & Molotsky, PA, attorneys for appellant (Robert J. Adinolfi, of counsel and on the brief; Thomas A. Roberto, on the brief).

      Respondent has not filed a brief.

PER CURIAM

In this post judgment dissolution matter, plaintiff Cheryl Van Sciver appeals from the Family Part's January 8, 2020 order that established her and defendant Shawn Betten's obligation to contribute toward the cost of their older child's college education, and fixed defendant's child support obligation for the parties' younger child who was not yet attending college. She also appeals from a June 9, 2020 order that denied reconsideration of the earlier order. The orders under appeal included the imposition of a $10,000 cap on the parties' college expense contributions. They also rejected plaintiff's argument that defendant was obligated to make up any shortfall in college contributions that should have been covered by certain military benefits, to which defendant was entitled but were now missing.

On appeal, plaintiff contends that the imposition of the cap on the college contributions was arbitrary and inconsistent with the parties' marital settlement agreement (MSA) that was incorporated into their final judgment of divorce (JOD), and it improperly shifted the burden of the cost of higher education to the parties' children. Moreover, to the extent that the motion judge could not "resolve the issues" based on the motion record, he should have ordered a plenary hearing; and, in establishing the child support for the younger child, the judge made numerous errors in his calculation of defendant's income and application of the child support guidelines (Guidelines). Child Support

Guidelines, Pressler & Verniero, Current N.J. Court Rules, Appendix IX-A to R. 5:6A, www.gannlaw.com (2021).

We have considered plaintiff's contentions in light of the motion record and the applicable principles of law. We reverse the denial of reconsideration; vacate portions of the orders under appeal; and remand for determination of the parties' college expense obligations and child support because the MSA made no provision for any "caps" other than the parties' financial circumstances, and the motion judge provided an inadequate explanation of his reasons for its imposition. Because we vacate the college contribution determination, we also vacate and remand the issue of the children's support for reconsideration.

The facts are taken from the motion records and are summarized as follows. Plaintiff and defendant married in December 1999. They have two children, a son who is now twenty years old, and a daughter who will shortly be turning nineteen.[1] The parties divorced pursuant to a July 26, 2016 JOD that incorporated their earlier MSA and an addendum to the MSA that they signed the same day as their divorce.

In their MSA, the parties established their obligations for the support of their children going forward. The MSA specifically contained a provision about contributing to college expenses of the parties' children that stated:

---

[1] The parties also have an adopted daughter, who is emancipated.

 A-3874-19

## 10. College Tuition and Related Expenses of the Child

The parties hope that the minor child[ren] will go to college or other post-secondary school after graduation from high school. The parties acknowledge that the minor children each have two (2) years of college paid for by the Post 9/11 GI Bill as transferred to them by [defendant]. Minor children will have tuition covered for two years plus receive a monthly stipend. The parties agree to discuss and agree on the best use of the Post 9/11 GI bill benefits in the event the children go to community college for the first two years and then the subsequent two years are spent at a four-year institution as the parties acknowledge that the Post 9/11 GI bill would best be used for their second two years of school at the four-year college. The parties acknowledge that each of them should contribute toward the college tuition and expenses of the child. Each party's contribution will be based upon the parties' then-existing financial circumstances at the time of the child's enrollment in college or other post-secondary education. As such, the parties agree to review their respective obligations to contribute toward the costs of the child's college education and related expenses at the end of the child's junior year of high school. The parties specifically agree to discuss their respective contributions, and the expected contribution of the child if any, toward the child's college tuition and related expenses in consideration of the standards enumerated in the case of Newburgh v. Arrigo, 88 N.J. 529 (1982), and/or other then-applicable case law.

The parties agree that the child should explore and attempt to obtain all available grants, scholarships, loans, and other financial aid. The parties further agree that their respective contributions toward the child's college expenses shall be determined after taking into account all grants, scholarships, loans, and other financial aid that may be available to the child at the time of enrollment.

4

> It is understood by the parties that they must attempt to agree in advance on the child's choice of college, or other post-secondary school, as well as the reasonableness of the unreimbursed portion of the tuition and related expenses to which they are expected to contribute, before the child is committed to attend a particular school. The parties agree that the child shall also have input as to her choice of college. If the parties cannot agree, then either is free to petition a court of competent jurisdiction for a determination in this regard.
>
> . . . .
>
> b. Child support shall be renegotiated depending on each party's then financial circumstances and each party's contribution towards college expenses when each child leaves for college . . . .

[Emphasis added.]

Additionally, the MSA provided for the parties' obligations for the support of the children, who were not in college at the time the MSA was signed. It stated that defendant would pay $1,000 per month as child support, which the parties acknowledged was based upon a Guidelines calculation attached to the agreement that the MSA stated was based upon defendant's "gross annual income [being] $97,500 (consisting of his civilian pay with Cintas and his Army Reserve pay)," and plaintiff's "attributed gross annual income [being] $110,000.00." The parties later modified the MSA by agreement on two occasions that did not alter the provisions about college contributions.

5

In 2018, plaintiff filed a motion to modify child support and to compel defendant's payment of various expenses, and defendant cross-moved, seeking various forms of restitution and discovery from plaintiff. In response, the motion judge entered an order scheduling a plenary hearing regarding the parties' finances, calculation of child support, and payment of child-related expenses. Evidently, the hearing was not held because on June 20, 2018, the parties executed a consent order that was filed with the court on September 13, 2018. The consent order modified defendant's child support obligation for both children to $423 per week retroactively beginning on February 23, 2018, based on recalculated gross incomes of $2,115 per week for plaintiff ($109,980 gross taxable income), $2,397 per week for defendant ($124,644 gross taxable income), and $336 per week from defendant's non-taxable military and disability benefits he received through the United States Department of Veterans Affairs (VA) ($17,472 nontaxable income). Consistent with the parties' respective incomes at that time, the consent order also provided that the parties would share all non-Guideline expenses with defendant paying 59% and plaintiff paying the balance.

Subsequently, the parties' son was admitted to Syracuse University (Syracuse). During the selection process leading up to the son's decision to go to Syracuse, plaintiff kept defendant informed about the process. Defendant

never objected to the son's selection of that school and when he was told about the son's acceptance and Syracuse's policy regarding veterans' benefits, defendant wrote to plaintiff that he was "thrilled to hear about [our son's] decision. To keep funding clear, [our son's] tuition and payments will be discussed and clarified in upcoming court—whatever isn't covered by the [veterans' benefits] will be decided by the judge."

In April 2019, plaintiff filed a motion seeking to address the issue, and defendant cross-moved seeking discovery regarding plaintiff's remarriage or, alternatively, to discharge his responsibility to contribute toward the children's college expenses. In response, the motion judge entered an order on May 16, 2019, denying defendant's application as premature and directing the parties "to comply with the applicable portions of the [MSA] and prior [o]rders." The order also denied plaintiff's request for an order "[e]nforcing the [MSA] regarding college contribution[s]" without prejudice.

The following month, plaintiff filed a motion seeking, among other things, an order requiring defendant to pay 59% of the fee charged for their son to save a place at Syracuse that was due on July 19, 2019, and requiring defendant to pay going forward 59% of whatever amount of tuition and college expenses remained outstanding after application of the veterans' benefits, scholarships, and other financial aid. Defendant filed a cross-motion, seeking, among other

7

things, that his child support obligations for their son be terminated because the child was no longer living with his mother; and for the veterans' benefits, including "Yellow Ribbon" benefits[2] awarded to the son due to defendant's military service, to be credited as defendant's contribution to his son's college expenses under the MSA.

After considering the parties' oral arguments on July 19, 2019, the motion judge placed his decision on the record and, later, memorialized it in an order filed on September 9, 2019. In his decision, the judge ordered defendant to pay $2,075.62 that day to secure the son's spot at Syracuse and elected to carry the issue of the parties' expense-sharing ratio until a full hearing could be held on the matter, which the judge scheduled for August 30, 2019.

Shortly after the July 19 hearing, defendant again filed a motion to terminate or modify his child support obligations for his son and for an order directing that his obligation to pay college expenses would be satisfied by the funds the son received through defendant's veterans' benefits. Plaintiff opposed this motion and filed a cross-motion, seeking an order compelling defendant to share in the full costs of the son's college education consistent with the parties'

---

[2] Yellow Ribbon benefits aid recipients of the Post 9/11 GI Bill benefits in paying for college costs and expenses not otherwise covered by the GI Bill with some exceptions, including housing.

A-3874-19

MSA, and modifying defendant's child support obligation for the parties' daughter effective when the son left for college.

On September 20, 2019, the motion judge issued an order requiring the parties to "submit . . . supplemental documents within fourteen (14) days" and directing that a hearing would be rescheduled upon receipt of the supplemental documents. After defendant filed supplemental documentation, the matter was scheduled for oral argument on November 18, 2019.

At oral argument, no express request was made for a specific cap on the parties' respective college contribution obligations. Instead, defendant urged the judge to generally limit his obligation to pay expenditures made on the son's behalf, as defendant felt he was not being given a voice in making college related purchases. Also, plaintiff raised an issue about missing veterans' benefits, arguing that defendant had represented in the MSA that each child had two years of benefits to apply to college expenses, but that at the time that their son enrolled at Syracuse, only eighteen months of benefits remained. Accordingly, she argued that defendant used the benefits and should be held personally liable for the deficit created by the missing benefits.[3] In response, defendant argued

---

[3] When the son applied for the veterans' benefits through the VA, the parties were made aware that only twenty-four months of benefits remained available— not the two years of college for each child as contemplated by the MSA. In response to defendant's inquiry, a claims examiner with the VA informed

that it would be improper to hold defendant personally liable for the deficit, because there was no proof in the record that defendant had used the benefits.

Without conducting a plenary hearing, on January 8, 2020, the motion judge issued an order in response to the parties' motions providing, in relevant part, that defendant's child support obligation for the son would be fixed in the amount of $139 per week, effective August 24, 2019, the date the son entered college. For the daughter, defendant's child support obligation would be $280, effective August 24, 2019. In his oral decision placed on the record that day, the judge stated the following as to the imposition of a $10,000 cap on the parties' college expense obligation:

> A party's obligation to provide a college education to their children is not unlimited. Based on the respective income and CIS the court finds that the parties shall be responsible for any uncovered expenses up to a total of $10,000 per year per child on a 51[%] for defendant and 49[%] for plaintiff basis.

As to college expenses, the judge's order stated the following:

> 5. Plaintiff[']s request that the [c]ourt re-affirm the party's agreement under the MSA to share in all costs not covered by the [eighteen] months per child Post 9/11 GI Bill benefits, Yellow Ribbon benefits,

defendant that benefit transfers are handled by the Department of Defense (DOD), and not the VA. As such, because the DOD does not automatically audit the VA's records, the DOD, according to its website, will permit veterans to "transfer" benefits even if those benefits do not exist. Additionally, the claims examiner informed defendant that the missing benefits had been used at some point between September 2001 and May 2004.

scholarships, and grants is DENIED as REQUESTED. Consistent with the other terms of this [o]rder, the parties shall be jointly responsible for any uncovered college expenses up to a total of $10,000 per year for each child on a 51% for [d]efendant and 49% for [p]laintiff basis. . . .

6. The respective minor children shall be responsible for $7,000 in college expenses not covered by veteran benefits, scholarships and grants. The minor children may apply $100 per week for [fifteen] weeks each semester to general living expenses. The remaining $4,000 shall be applied to any expenses before the parties have an obligation to contribute.

[Emphasis added.]

The order also denied plaintiff's request to have defendant held responsible for the missing veterans' benefits.

Plaintiff filed a motion for reconsideration on January 28, 2020. In her motion, plaintiff asked the judge[4] to set defendant's weekly child support for their daughter at $366 per week, to remove the $10,000 per year cap placed on the parties' college contribution obligations, and for the judge to set the parties' obligation to pay the uncovered portion of any college expenses on a 52% for defendant, 48% for plaintiff ratio as contemplated by the MSA. Plaintiff also

---

[4] Plaintiff initially sought reconsideration of other paragraphs of the January 8, 2020 order as well. However, her appellate case information statement and amended notice of appeal indicate she is appealing only paragraphs one, three, four, and five of the court's June 9, 2020 order, which denied reconsideration of paragraphs one, five, six, and eight of the court's January 8, 2020 order; and the court's June 18, 2020 correction of its child support calculations.

11

A-3874-19

asked the judge to clarify that "student loan money ($5,500.00) is paid directly to the college for tuition and housing costs and not available to children for general living expenses," and that "the remaining $1,500[.00] that will be available for the children's general living expenses and how the parties will handle the $1,500.00 deficit not available for general living expense." Finally, plaintiff requested the judge reconsider his order declining to hold defendant liable for "missing veterans['] benefits he misrepresented and used."

In her supporting certification, plaintiff detailed the errors she believed the judge made in calculating the Guidelines child support amount. She also stated that she had no objection to her son being responsible for a portion of his college costs that totaled approximately $74,000 annually. However, she explained that her son secured $5,500 in annual loans so that the remaining $1,500 should be paid by the parties according to the percentages of their income. As to the $10,000 cap, she noted that the judge already found there was no dispute as to the selection of Syracuse and that only $17,000 of the annual costs had been accounted for in the order. Moreover, there was nothing in the MSA about a cap and the judge had found there was no reason to not enforce the MSA as written.

Defendant filed a cross-motion opposing plaintiff's reconsideration motion. In his opposition, defendant did not argue that the judge's imposition

12

of the cap was consistent with parties MSA. Instead, he stated that he "agree[d] with the cap established by the court," because it "allow[ed] the child to understand their stake in their future and provid[ed] financial certainty and clarity" for the parties. According to defendant, "all I ever wanted was a voice and meaningful input into the costs of college for our children." Defendant never claimed that his financial circumstances prevented him from contributing more after application of the veterans' benefits and any financial aid.

The motion judge heard oral argument on the parties' motions on February 28, 2020. At oral argument, the judge acknowledged that he had made an error in his calculation of defendant's child support obligation by failing to include an undisputed figure in defendant's income.

Thereafter, on June 9, 2020, the motion judge placed on the record his decision granting in part and denying in part plaintiff's motion for reconsideration, and he filed an order that day. The order stated, in relevant part, that the judge prepared new Guideline calculations and concluded that defendant's child support obligation remained at $280 per week and that "[a]ny of the parties' obligations based on the line 7 percentages is similarly modified to reflect the revised Parent's Share of Income." He denied plaintiff's motion for clarification and her request to lift the $10,000 cap on college expenses and to hold defendant responsible for the missing veterans' benefits.

13

Explaining his decision to place a $10,000 cap on the parties' college expense contributions, the judge stated

> [W]hile there is no dispute that Syracuse is an appropriate school for the parties' son, . . . as it relates to the education it can provide, that itself does not mean it is affordable based on the parties' income, especially when there is a second child who is expected to attend college.
>
> The parents under either New Jersey law or their [MSA] did not have an obligation to fund the cost of a school just because it offers an appropriate education for the respective child. The parents' obligation is based on the Newburgh factors including an ability to pay and the ability to fund an appropriate—and the obligation is to fund an appropriate college education, not any given school.
>
> . . . .
>
> The court's interpretation of the parties' [MSA], specifically the language that each party's contribution may be based upon the party's then existing financial circumstances was not an agreement that the obligation was unlimited to fund college. Nothing presented to the court supports finding that the court in this case made its interpretation of the [MSA] or obligation under New Jersey law based on a palpably incorrect basis [or] failed to appreciate the . . . significance of probative or competent evidence.

The judge added that under New Jersey law, "parents do not have an unlimited obligation to fund a child's college education." He explained that in imposing the cap, he "evaluated the parties' respective incomes and the other

14

factors as required by <u>Newburgh</u> and set the parties' obligations for the children's college education."

In denying plaintiff's request for clarification, the judge stated that "the child is only [to] have $1,500 to contribute towards their general spending for the fall and spring semesters," and explained that he intended "to set the child's contribution toward college at a minimum of $7,000, up to which $1,500 could be used each semester for uncovered personal expenses." The judge added that "[t]he child may ultimately be required to fund a greater portion of [his] college education over and above [his] parents' contribution," that "[t]he cost of Syracuse is more than the amount available from the child's parents," and if the son would "like to continue at Syracuse[,] he may be required to incur personal debt above and beyond the amount of student loans indicated in the court's prior decision."

The judge also denied plaintiff's request that he reconsider his order declining to hold defendant responsible for the missing veterans' benefits. In doing so, he explained that his earlier denial was not "based . . . on a palpably incorrect basis" nor did he fail "to appreciate the significance of probative or competent evidence," because, "in evaluating the responsibilities of the parties or the missing benefits[, he] found that there was a determination of what benefits existed and that there was no proof of fraud."

Last, as to the issue of child support for the daughter, the judge explained that he had previously failed to include a certain amount in his calculation of defendant's income. The judge stated, however, that even with this correction, and changing defendant's tax filing status to "single" and plaintiff's filing status to "married," the resulting child support amount under the Guidelines came to the same $280 per week figure that he set in his January 8 order.

Thereafter, on June 18, 2020, the motion judge entered an order amending paragraph one of the June 9, 2020 order, modifying defendant's child support for his daughter and fixing it at $343 per week beginning on August 24, 2019, consistent with the "recalculated guidelines" the judge attached to the order. The recalculated guidelines, however, did not make use of any of the figures from the 2019 tax information, which defendant submitted in February 2020, and failed to properly credit defendant on line 15 for the military benefits entered for his daughter on line 5. This appeal followed.

Our review of a Family Part judge's determination about child support, including contributions to college expenses, is limited to whether the judge abused his or her discretion. See Avelino-Catabran v. Catabran, 445 N.J. Super. 574, 587-88 (App. Div. 2016). "If consistent with the law, such an award will not be disturbed unless it is manifestly unreasonable, arbitrary, or clearly contrary to reason or to other evidence, or the result of whim or caprice." Id. at

587 (quoting Jacoby v. Jacoby, 427 N.J. Super. 109, 116 (App. Div. 2012)). "However, we confer no deference to a trial court's interpretation of the law, which we review de novo to determine whether the judge correctly adhered to applicable legal standards." Ibid. (citing Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

Where an award of child support is the subject of a reconsideration motion, we again apply an abuse of discretion standard. On appeal from a denial of a motion to reconsider, our review is limited, but the denial "will be set aside if its entry is based on a mistaken exercise of discretion." Brunt v. Bd. of Trs., Police & Firemen's Ret. Sys., 455 N.J. Super. 357, 362 (App. Div. 2018). A trial court abuses its discretion "when a decision is 'made without a rational explanation, inexplicably depart[s] from established policies, or rest[s] on an impermissible basis.'" Ibid. (quoting Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015)).

Reconsideration should only be used in those rare cases that fit into a narrow category where "either 1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010) (quoting D'Atria v. D'Atria, 242 N.J. Super. 392, 401 (Ch. Div. 1990)).

17

With those guiding principles in mind, we turn to the primary issue on appeal of whether the motion judge abused his discretion by imposing a $10,000 cap on the parties' obligation to pay for child support in the form of contributions to college. When determining a parent's contribution to a child's college expenses, Family Part judges should "balance the statutory criteria of N.J.S.A. 2A:34-23(a)[5] and the Newburgh factors,[6] as well as any other relevant

---

[5] The statute lists the following factors:

> (1) Needs of the child;
> (2) Standard of living and economic circumstances of each parent;
> (3) All sources of income and assets of each parent;
> (4) Earning ability of each parent, including educational background, training, employment skills, work experience, custodial responsibility for children including the cost of providing childcare and the length of time and cost of each parent to obtain training or experience for appropriate employment;
> (5) Need and capacity of the child for education, including higher education;
> (6) Age and health of the child and each parent;
> (7) Income, assets and earning ability of the child;
> (8) Responsibility of the parents for the court-ordered support of others;
> (9) Reasonable debts and liabilities of each child and parent; and
> (10) Any other factors the court may deem relevant.

[6] In Newburgh, the Court set forth twelve non-exhaustive factors in considering what portion of college expenses a child may reasonably demand of a non-custodial parent:

circumstances, to reach a fair and just decision whether and, if so, in what amount, a parent or parents must contribute to a child's educational expenses." Gac v. Gac, 186 N.J. 535, 543 (2006).

Once a determination is made, Rule 1:7-4 requires that a judge issue a statement of reasons, including detailed findings of facts and conclusions of law, that enables the litigants and a reviewing court to understand the reasons for the judge's decision. "Naked conclusions do not satisfy the purpose of" Rule 1:7-

> (1) whether the parent, if still living with the child, would have contributed toward the costs of the requested higher education; (2) the effect of the background, values and goals of the parent on the reasonableness of the expectation of the child for higher education; (3) the amount of the contribution sought by the child for the cost of higher education; (4) the ability of the parent to pay that cost; (5) the relationship of the requested contribution to the kind of school or course of study sought by the child; (6) the financial resources of both parents; (7) the commitment to and aptitude of the child for the requested education; (8) the financial resources of the child, including assets owned individually or held in custodianship or trust; (9) the ability of the child to earn income during the school year or on vacation; (10) the availability of financial aid in the form of college grants and loans; (11) the child's relationship to the paying parent, including mutual affection and shared goals as well as responsiveness to parental advice and guidance; and (12) the relationship of the education requested to any prior training and to the overall long-range goals of the child.
>
> [Newburgh, 88 N.J. at 545.]

4(a), which requires specific findings. Curtis v. Finneran, 83 N.J. 563, 570 (1980). "Rather, the trial court must state clearly its factual findings and correlate them with the relevant legal conclusions." Ibid. "Meaningful appellate review is inhibited unless the judge sets forth the reasons for his or her opinion." Giarusso v. Giarusso, 455 N.J. Super. 42, 53 (App. Div. 2018) (quoting Strahan v. Strahan, 402 N.J. Super. 298, 310 (App. Div. 2008)).

In the present case, the judge correctly determined that the parties' obligation to pay for college without seeking loans and other assistance is not unlimited. However, aside from the judge's representation that its imposition of the joint $10,000 cap was "[b]ased on the [parties'] respective income[s] and CIS[s]," the record is barren of any detailed analysis of the parties' financial circumstances regarding their incomes, living expenses, other liabilities, or of any considerations of the other specific Newburgh or statutory factors that the judge made repeated passing references to in his decisions. Without the analysis, we are prevented from engaging in any meaningful review of the judge's decision from which we could glean in any meaningful way how the $10,000 cap on college expense contributions is based on the parties' financial circumstances at the time of the son's enrollment in Syracuse.

Moreover, and significantly, "we review the interpretation of a[n] [MSA] de novo," Amzler v. Amzler, 463 N.J. Super. 187, 197 (App. Div. 2020), and we

conclude from that review in this case that the imposition of a cap on the parties' total contribution towards college was not provided for in their MSA, which the judge was obligated to enforce, absent extraordinary circumstances. See Capparelli v. Lopatin, 459 N.J. Super. 584, 604 (App. Div. 2019) (quoting Quinn v. Quinn, 225 N.J. 34, 45 (2016)) ("[W]hen the intent of the parties is plain and the language is clear and unambiguous, a court must enforce the agreement as written, unless doing so would lead to an absurd result.").

Here, it was undisputed that neither parent objected to their son attending Syracuse, despite its high cost or to, as the MSA stated, "the reasonableness of the unreimbursed portion of the tuition and related expenses to which they are expected to contribute." The only issue was how much was each parent going to contribute based upon their financial circumstances at the time. Nevertheless, the motion judge determined, sua sponte, that Syracuse was an impractical choice and shifted the burden of the costs, above the parties' $10,000 maximum in contributions, to the child, rather than leaving it upon the parents to pursue whatever financial assistance they needed through loans or other sources to fund the payment of the cost for the school to which they all agreed. There is nothing in the MSA to support that result.

We are therefore constrained to reverse the denial of reconsideration, vacate the child support award for both children, and remand to the motion judge

21

for reconsideration of all the required factors and the issuance of a more robust written or oral decision that reveals the details of the required analyses. The vacating of the child support award for the younger child is required because a determination of the college contributions will impact the parents' ability to support the younger child as well and will require a new Guidelines calculation, to the extent they are applicable to the parties based on their incomes and expenses.

To the extent those analyses require the resolution of any disputed material facts, we trust the judge will direct that a plenary hearing—as was previously ordered several times but never held—will be conducted after a period of discovery, including the filing and exchange of updated case information statements and other financial information. Milne v. Goldenberg, 428 N.J. Super. 184, 201 (App. Div. 2012) (quoting Tretola v. Tretola, 389 N.J. Super. 15, 20 (App. Div. 2006)) ("When faced with evidence of disputed material facts, a judge must permit a plenary hearing in order to reach a resolution."). To plan the remand process, we suggest the Family Part convene a case management conference within twenty days.

Turning to plaintiff's contentions about why defendant should be responsible for the difference between the veterans' benefits contemplated by the MSA and those actually available to the children, we conclude her assertions

are without sufficient merit to warrant discussion in a written opinion. R. 2:11-3(e)(1)(E). Suffice it to say, as the motion judge found, there was no evidence that defendant did anything wrong to purposely cause any diminution in the available benefits, and no proof of what the parties relied upon at the time they entered into the MSA.

Finally, as to plaintiff's remaining argument about the need for the recalculation of her daughter's child support, we need not address the issue because, as already noted, we are vacating the award for the lack of findings on the college issue and the imposition of the cap. Any arguments plaintiff wishes to raise about errors in the judge's calculations to date can be reasserted as part of the proceedings on remand.

Affirmed in part; reversed, vacated and remanded in part for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-3874-19